DR. A. REED CUSHION SHOE CO., Limited, v. FREW et al.

(Circuit Court of Appeals, Second Circuit. June 29, 1908.)

No. 260.

1. PATENTS—ASSIGNMENTS—EFFECT.

Mere assignments of patents for the manufacture of shoes, having cushioned insoles, did not carry the right to the assignee to use the patentee's name in connection with shoes manufactured under such assignments.

2. TRADE-MARKS AND TRADE-NAMES—TRANSFER—USE OF INDIVIDUAL NAME.

Where a patentee of cushion insoles, for shoes, registered a trademark consisting of a representation of a shoe on a cushion, and the words "Doctor A. Reed's," printed above the cut, the name so printed was not an essential part of the trade-mark, and hence, if a conveyance of the trade-mark gave any right to the use of the name, it was only in connection with the particular representation of a shoe on a cushion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 39, 40.]

3. SAME—UNLAWFUL COMPETITION—INDIVIDUAL NAME—ACQUIESCENCE AND USE.

Where the patentee of cushion insoles for shoes executed various licenses to manufacture shoes under such patents and acquiesced in the use of his name by complainant and other licensees for a considerable period, during which they expended large sums to advertise shoes made under such name, complainant was entitled to restrain the use of such name with the patentee's consent by others manufacturing cushion shoes under later patents obtained by the patentee for alleged improvements, the effect of which was to mislead purchasers to believe that such shoes were those manufactured by complainant under the original patent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 84.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Evans v. Suess Ornamental Glass Co., 30 C. C. A. 376.]

4. PATENTS—SALE—RIGHTS OF INVENTOR.

An inventor, who disposes of his patents, does not thereby lose the right to describe himself, in connection with claimed improvements, as the inventor of the original device.

5. TRADE-MARKS AND TRADE-NAMES—USE OF INDIVIDUAL NAMES—CORPORATION.

Where an inventor parted with the right to manufacture under the original patents with the right to use his name in the sale of the patented article, after having patented certain improvements, was entitled to describe himself as the inventor of the original article in connection with the sale of the articles made under the later patents, a corporation of which he was president, and in which he had a substantial interest and its licensees to manufacture, under such later patents, were entitled to the same right.

[Ed. Note.—Right to use one's own name as a trade-name, see notes to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Malzkaffee Fab. v. Pastor Kneipp Med. Co., 27 C. C. A. 357.]

6. SAME—SCOPE OF REVIEW.

Complainant, having acquired a patented device for making cushion insoles in shoes, was permitted by the inventor to use his name in connection with the manufacture and sale of such shoes, which by extensive advertisement became well and favorably known, after which the inventor made certain improvements on such soles and formed a corporation of which he was president, and in which he had substantial interest,

which licensed the right to manufacture and sell shoes under the later patents. *Held*, that such corporation and its licensees were only entitled to use the inventor's name in manufacture and sale of their shoes in connection with an express statement that such shoes were not those made under the original patent

Appeals from the Circuit Court of the United States for the Western District of New York.

For opinion of the court below, see 158 Fed. 552.

Archibald Cox, for complainant.

George C. Miller (William C. White, of counsel), for defendant.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. In 1894 Adam Reed, a surgeon chiropodist known as "Dr." Reed, devised a method of manufacturing shoes having cushions upon their insoles called "Cushion Shoes." In 1895, 1896, and 1900, respectively, he obtained three patents covering his invention, which were issued to him jointly with one George J. Winter. In 1897 he registered a trade-mark consisting of a representation of a shoe and a cushion. In the drawing accompanying the statement, the words "Doctor A. Reed's" were printed above the cut of a shoe resting upon a cushion. Those words, however, were not a necessary part of the trade-mark. The manufacture of shoes embodying the invention of Dr. Reed was commenced while the applications for the patents were pending and was carried on by manufacturers under licenses from the patentees. The shoes were offered for sale and sold as "Dr. A. Reed's Cushion Shoes." These licensee manufacturers having gone into liquidation, said patents and trade-marks were assigned by the patentees to the Metropolitan Bank of Buffalo, N. Y. From the Metropolitan Bank they passed, in 1901, to the firm of William Goodyear & Co., from which the complainant acquired its title. The complainant does not itself manufacture shoes under the Reed patents, but in 1901 licensed the J. P. Smith Company of Chicago, Ill., to manufacture men's shoes, and the John Ebberts Shoe Company of Buffalo, N. Y., to manufacture women's shoes, upon a royalty basis. The shoes made by both these manufacturers are of a high grade and retail for $5 per pair. Since 1902 large sums of money have been spent in advertising the shoes manufactured under these patents; the original name, "Dr. A. Reed's Cushion Shoes," being used. Stores have also been opened in different cities for the sale of these shoes exclusively. The result is that a large trade has been built up in them, and that they are well and favorably known to the public. In 1900 and 1901 Dr. Reed obtained two other patents for improvements in shoes having cushion insoles, and in 1904 he was granted an additional patent. In 1905 he became associated with certain other persons and a corporation, the defendant E. Z. Shoe Company, was formed, to which these three patents were assigned, and to which and its licensees Dr. Reed also conveyed the right to use his name in advertising and describing shoes. The purpose of the corporation was to license manufacturers to make shoes under the patents of Dr. Reed and use his name in connection therewith, upon a royalty basis. Dr. Reed became president of the corporation and owned one-fifth of its stock.

Since the formation of the defendant corporation, shoes embodying these later patents of Dr. Reed have been manufactured and sold by manufacturers licensed by it. These shoes have been inferior in quality, and have been sold at a lower price than the shoes manufactured by the complainant's licensees. These shoes were at first called the "E. Z. Shoe," and later the "Improved Cushion Sole Shoe," followed by the words, "Dr. A. Reed, Patentee." The words "Dr. A. Reed, Patentee" have also appeared alone on the straps and soles of the shoes. This use of the name "Dr. A. Reed" is what the complainant complains of in the present case. It is not contended that the defendants in any way imitate the products, devices, packages, or advertisments of the complainant or its licensees. The whole contention is in respect of the name.

The Circuit Court sustained the complainant's contention and enjoined the defendants, being said E. Z. Shoe Company, its licensees, and some of its stockholders, from making any use of the names, "Dr. A. Reed," "Dr. Reed," "Reed," or other similar name in connection with the sale of shoes. The defendants appeal from this decision, and the complainant also appeals because it was not awarded profits and damages.

In considering the rights of the parties, it must be borne in mind at the outset that Dr. Reed never expressly granted to the complainant, or to any of its predecessors in title, any exclusive right to use his name in connection with shoes embodying the invention of his patents. The mere assignment of the patents carried no such right. The name was not an essential part of the registered trade-mark, and, if its conveyance gave any right to use the name, it was only in connection with the particular representation of a shoe upon a cushion. The substantial rights of the complainant with respect to the name must be founded upon the acquiescence of Dr. Reed.

Now, Dr. Reed did acquiesce in the use of the name "Dr. A. Reed's Cushion Shoes" by the complainant and its licensees. This name had been used with his knowledge and approval to describe the shoes manufactured under the earlier patents long before their assignment to the complainant's predecessor in title. The same name was employed by the complainant's licensees, and large sums of money were spent to advertise it. Dr. Reed knew of such use and made no objection. The name became in a sense identified with the shoes manufactured under the earlier patents. Its use by others would give them the results of the labors and expenditures of the complainant and its licensees. Against this the complainant is entitled to protection. Dr. Reed, on the other hand, is entitled to make known to the public, in connection with the sale of shoes embodying his later inventions, the fact that he was the inventor of the original Reed cushion shoe. An inventor who disposes of his patents does not lose the right to describe himself in connection with claimed improvements as the inventor of the original device. Dr. Reed had no right to sell his improved shoe as the original shoe, but to prevent him in connection with the sale of the later shoe from describing himself as the inventor of the earlier one would be to give the complainant that which it neither bought nor paid for.

But it is urged that, if Dr. Reed could use his name in connection with the sale of shoes made under his later patents, he could not transfer such right to others. In considering this contention, we are not called upon to determine whether a patentee can assign to a stranger in connection with the sale of a patent the right to use his name. In the present case Dr. Reed became associated with several persons to use his later patents. Had they formed a partnership, manifestly Dr. Reed's name could have been used in the business. That they formed a corporation of which Dr. Reed was president and in which he had a substantial interest makes, in our opinion, no difference. As said by Mr. Chief Justice Fuller, in Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 136, 25 Sup. Ct. 612, 49 L. Ed. 972:

"We cannot perceive any practical distinction between the use of the name in a firm and its use in a corporation. * * * The formation of a corporation as an effective form of business enterprise was not only reasonable in itself, but the usual means in the obtaining of needed capital."

Nor do we think that there is any practical distinction between the manufacture and sale of shoes by licensees of the defendant corporation and such manufacture and sale by the defendant itself. Certainly the complainant whose own rights are based upon use by licensees is in no position to raise this question.

It is undoubtedly true that the motive actuating Dr. Reed and his associates in forming the defendant corporation was the desire to avail themselves of the reputation attaching to the name of Dr. Reed in connection with cushion shoes; but this motive was not necessarily illegitimate so long as the defendants did not palm off their shoes as those of the complainant or its licensees. As also said in Howe Scale Co. v. Wyckoff, Seamans & Benedict, supra:

"Doubtless, Remington and Sholes, in using the name 'Remington-Sholes,' desired to avail themselves of the general family reputation attached to the two names; but that does not in itself justify the assumption that their purpose was to confuse their machines with the complainant's or that the use of the name was in itself calculated to deceive. Remington and Sholes were interested in the old company, and Remington continued as general manager of the new company. Neither of them was paid for the use of his name, and neither of them had parted with the right to that use. Having the right to that use, courts will not interfere where the only comparison, if any, results from a similarity of the names, and not from the manner of the use. The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor, for those of another, and, if defendant so conducts its business as not to palm off its goods as those of the complainant, the action fails."

We are therefore brought thus far:

1. The complainant is entitled to protection in the use of the name "Dr. A. Reed's Cushion Shoes."

2. The defendants are entitled to use Dr. Reed's name in connection with the shoes embodying his later patents.

How are these rights to be reconciled? What decree will protect the rights of the one party without unduly trenching upon the rights of the other?

The answer to these questions is a simple one. The defendants upon their shoes, packages, and advertisements should be permitted to

state the whole truth, and no less. They should be allowed to say that their improved shoe is manufactured under patents of Dr. A. Reed later than those embodied in the original "Dr. A. Reed's Cushion Shoe," but that it is not such original shoe. The words "Dr. A. Reed, Patentee," upon the pull straps or soles of shoes, standing by themselves, are misleading. They may state the truth, but their vice is that they fail to state the whole truth. Such use of the words should be restrained.

It is urged, however, that any use by the defendants of Dr. Reed's name will cause confusion, that purchasers may still be misled, and that unscrupulous dealers are furnished with a ready means for deceiving. But the defendants cannot be held responsible for the deception of others. The complainant chose to adopt as a trade-name the name of a living person, when innumerable distinctive names were open to it. It is entitled to full protection against fraud and deceit, but is not in a position to complain of mere confusion.

For these reasons we think the injunction granted in the decree of the Circuit Court too broad. As already pointed out, it enjoins the defendants from making any use of the names "Dr. A. Reed," "Dr. Reed," "Reed," or any name substantially like them in connection with the sale or offering for sale of shoes. It should be so modified as to permit the defendants, in connection with the sale and offering for sale of shoes made under said later patents of Dr. Reed, to use a statement to the effect, in substance, that such shoes are made under such patents, and that Dr. Reed, the inventor, was the inventor of the original "Dr. A. Reed Cushion Shoe," but that such shoes are not the original shoes. Only the use of the entire statement should be permitted, and it should be embraced in a single paragraph printed from the same sized type.

The following is a specific example of such a notice as we deem proper:

Improved Cushion Sole Shoe. Dr. A. Reed, Patentee, 1900, 1901. But this is not the original Dr. A. Reed Cushion Shoe previously patented.

The other provisions of the decree, including the provision for costs, except as necessarily modified by the foregoing changes, should be retained.

The decision of the court denying an accounting was correct.

The decree of the Circuit Court is reversed, without costs to either party in this court, and the cause is remanded to the Circuit Court, with instructions to enter a modified decree in favor of the complainant, in accordance with this opinion.