STIX, BAER & FULLER DRY GOODS CO. et al. v. AMERICAN PIANO CO.†

(Circuit Court of Appeals, Eighth Circuit.   November 28, 1913.)

No. 3953.

1. TRADE-MARKS AND TRADE-NAMES (§ 73*) — INDIVIDUAL NAMES — RIGHT TO USE.

Where two grandsons of the original piano manufacturer, "William Knabe," transferred their interests in the corporation manufacturing the original piano, and started a new corporation for the manufacture of pianos, they were entitled to use their own name in such business, under the rule that a family surname is incapable of exclusive appropriation in trade.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 73*)—FAMILY NAME—USE IN TRADE.

Where a family name has become known in trade, the second user must not do anything to cause the public to believe that his article is that of the first manufacturer, or that he is the successor of the first manufacturer, but must exercise care to prevent the public from so believing.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 73*)—FAMILY NAME—DUTY OF SECOND USER TO WARN.

The duty of the second user of a family name to warn the public that his goods are not those of the first maker must not be pressed so far as to make it impracticable for the second user to employ his name in trade. Otherwise, the right which is granted under the law of trade-mark is denied under the law of unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 73*) — NOT PATENT RIGHT — UNFAIR TRADE COMPETITION.

The second user of a family name in trade may make an article which possesses all the qualities of the first manufacture, and may freely so advertise. It would be a grievous perversion of the law of unfair trade competition to use its doctrines so as to convert a trade-name into a patent right.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied May 4, 1914.

5. TRADE-MARKS AND TRADE-NAMES (§ 97*)—UNFAIR TRADE COMPETITION—INJUNCTION.

Injunctions restraining the use of a family name in trade should be specific, and not so general as to make the practical use of the name in trade impossible.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 68*)—UNLAWFUL COMPETITION—ELEMENTS.

The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer for those of another. It relates to the origin of manufacture, and not to the qualities of the goods.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. § 68.*]

7. TRADE-MARKS AND TRADE-NAMES (§ 97*)—UNLAWFUL COMPETITION—USE OF FAMILY NAME—INJUNCTION.

Grandsons of the original "Knabe," who founded the piano business of that name, having sold their interests in the corporation which succeeded to the original business, organized a new corporation under the name "Knabe Bros. Company," and continued manufacturing pianos. Injunctions were issued compelling them to state that their pianos were not "original Knabes," and forbidding them to make any oral or written statement "calculated to induce the public to believe that the pianos manufactured by them were Knabe pianos." Held, that the injunctions are too broad, because they deal, not with the origin of manufacture, but with the qualities of the instruments.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by the American Piano Company against the Stix, Baer & Fuller Dry Goods Company and others. From an order granting a preliminary injunction, defendants appeal. Modified and affirmed.

William Knabe began the manufacture of the piano which has since become famous as the "Knabe" in the city of Baltimore, in 1837. Soon after he took his two sons, Ernest and William II into partnership under the firm name of "Wm. Knabe & Co." The father died in 1864. The business was continued by members of his family under the same firm name; Ernest Knabe becoming the head of the firm. In 1889 the business was incorporated under the laws of Maryland, as "William Knabe & Company Manufacturing Company." In 1908 the property of this company, including trade-marks, trade-name, and good will, was transferred to the complainant, the American Piano Company, which was organized for the purpose of taking over the business of the Knabe Company, and also that of Chickering & Sons, of Boston, and the Foster, Armstrong Company of Rochester.

Ernest Knabe, Jr., and William Knabe III were the sons of Ernest Knabe above named, and grandsons of William Knabe, the founder of the business. These two men were taken into the factory in the late 80's, when they were 18 years of age, and trained by their father in the business of piano making, and the traditions of the family. Ernest Knabe died in 1894. Soon thereafter Ernest, Jr., and William III bought out the interest of the other members of the family in the corporation and became its sole owners and its executive officers, and so continued until the transfer to complainant in 1908. At that time they also became respectively president and vice president of complainant, and continued in that position until they retired from the company in 1911. They then went to Cincinnati, Ohio, organized a corporation under the laws of that state under the name of the Knabe Bros. Company, and engaged in the manufacture and sale of pianos.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Soon after the Knabe Bros. Company began business, the appellee filed its bill in the District Court for the Southern District of Ohio, against it and its officers, and prayed for a preliminary injunction restraining them from using the name "Knabe" either singly or in combination, upon pianos, in advertisements or otherwise, in the piano business. To this bill the defendant filed a cross-bill asking certain relief against the complainant. Upon the hearing the court issued an injunction restraining the Knabe Bros. Company from placing the words "Knabe Brothers" upon the fall-board or any conspicuous part of any piano manufactured or sold by them, but added the following language: "But this order shall not prevent Ernest J. Knabe, Jr., and William Knabe III from doing business under their own names or under the name of 'Knabe Bros. Company,' or from stating that the piano of their, or defendant's manufacture, is made by, or under the supervision of Ernest J. Knabe, Jr., and William Knabe III."

The court further enjoined the complainant in the case from displaying any sign or placard "containing the statement that the Knabes of the present generation are still making the William Knabe Company piano, or are connected with the American Piano Company, or making any statement from which the inference of such connection may be fairly drawn. Although it may be permitted to state, if it so desire, that a grandson of William Knabe is still connected with the making of the 'Knabe' piano." It further enjoined the complainant from "publishing that Ernest J. Knabe, Jr., or Wm. Knabe III have any connection with the American Piano Company."

Controversies arose as to the rights of the defendants under this injunction, and upon a subsequent application the court, for the guidance of the parties, made an order requiring defendant to place on the fall-boards of its pianos the following language:

"The Knabe Bros. Company.

"This piano is not an Original 'Knabe' but is made under the supervision of E. J. and Wm. Knabe III, grandsons of the original Wm. Knabe I."

No appeal has been taken from this order.

The appellant here, the defendant below, Stix, Baer & Fuller Dry Goods Company, conducts a large department store in the City of St. Louis. In 1912, it entered into contract with the Knabe Bros. Company, to sell their pianos, and to make them the leader in that line of trade. In promoting this business it advertised extensively in the papers of St. Louis, and some other trade journals. In December, 1912, the American Piano Company filed the present bill against the above-named appellant, and also against the Knabe Bros. Company and Ernest J. Knabe, Jr., and William Knabe III, setting forth the above facts and charging in particular that the advertisements were calculated to palm off defendant's pianos as complainant's, and also to cause the public to believe that defendants were the successors in business of the Baltimore concerns. Process was served upon the Stix, Baer & Fuller Co. alone, but the Knabe Bros. Company afterwards entered its appearance in the case and participated in its defense. The bill was supplemented by affidavits, and upon this showing complainant moved the trial court for a preliminary injunction. At the hearing counter affidavits were presented on behalf of the defendant. The trial court issued an injunction as prayed in the bill. It is general in its terms, enjoining the defendants "from making any oral representation or using or permitting to be used in connection with the sale of pianos, in any catalogue, placard, circular, advertisement, or otherwise, descriptive of pianos manufactured by the Knabe Bros. Company, any statement or representation calculated to induce the public to believe that the pianos manufactured by the said defendant, the Knabe Bros. Company, and sold or offered for sale by said the Knabe Bros. Company, or said defendants, Stix, Baer & Fuller Dry Goods Company, are Knabe Pianos." The court further found that the advertisements published by the Dry Goods Company were calculated to induce the forbidden belief on the part of the public and enjoined the defendants "from again or further making, using or issuing the said advertisements in the same or substantially the same form." The present appeal is brought to review that order.

211 F.—18

Gilbert Bettman, of Cincinnati, Ohio, and William S. Bedal, of St. Louis, Mo. (Edward C. Eliot, of St. Louis, Mo., on the brief), for appellants.

Frederick N. Judson and J. Porter Henry, both of St. Louis, Mo. (John F. Green, of St. Louis, Mo., and Masten & Nichols, of New York City, on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge (after stating the facts as above). This case is closely parallel with the Hall Safe Cases, reported in 208 U. S. 267, 28 Sup. Ct. 288, 52 L. Ed. 481, and 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616. There is this distinction: The present case concerns pianos, an article used in the fine art of music, and hence the personal genius of the maker would be a larger element than manufacturing and business organization in producing trade reputation. In the safe business the latter elements would be controlling. Here, as in the Hall Cases, there is nothing in the connection of the individual defendants with the Wm. Knabe & Co. Manufacturing Company or its sale to complainant, which restricts or estops them from using their names in the piano business.

[1] Ernest J. Knabe, Jr., and William Knabe III have a peculiar right to use the name "Knabe" in their trade. They are not pirates. They have not come into the piano business from some other field for the purpose of stealing a good name. They were bred and trained to the business and have known no other calling throughout their lives. They are the only living descendants of the man who made the Knabe piano famous, who now bear the name Knabe. They were associated with those founders in the production of the piano, and acquired their skill and traditions. They have the right to use their name in trade and state these facts. So said the Supreme Court in the Hall Safe Cases:

"With such explanation the defendants may use the Hall's name, and, if it likes, may say that they are sons of the first Hall, and brought up in their business by him, and otherwise may state the facts."

[2, 3] It is now settled beyond controversy that a family surname is incapable of exclusive appropriation in trade. The right of every man to use his own name in his business was declared in the law before the modern doctrine of unfair trade competition had arisen. It is part of the law of trade-mark. The subject may therefore be properly approached from that side. If, however, the name has previously become well known in trade, the second comer uses it subject to three important restrictions: (1) He may not affirmatively do anything to cause the public to believe that his article is made by the first manufacturer. (2) He must exercise reasonable care to prevent the public from so believing. (3) He must exercise reasonable care to prevent the public from believing that he is the successor in business of the first manufacturer. This duty to warn, however, must not be pressed so far as to make it impracticable for the second comer to use his name in trade. Otherwise we destroy under the law of unfair trade

competition the very right which we have saved under the law of trade-mark.

[4, 6] As to marks upon individual instruments, the inscription prescribed by the court in Ohio granted complainant the full measure of relief to which it is entitled. In fact, the court went further than some courts have been willing to go. L. E. Waterman & Co. v. Modern Pen Co., 197 Fed. 534, 117 C. C. A. 30. This case decides that the word "original," in a similar inscription, tended "to characterize the defendant's product as inferior to that of the complainant, and is unduly prejudicial to it," and modified the decree of the trial court so as to correct this impression. If the word "original" in the sentence, "This piano is not an original Knabe," means that the instrument is not made by the American Piano Company, or any of its predecessors in business, it does not go beyond the protection to which complainant is entitled. But the word is susceptible of another interpretation. It may mean that defendants' piano does not employ the qualities of the piano which had become famous under the name "Knabe." Given that meaning it is highly prejudicial to the defendants' rights, for it must be borne in mind that no part of the Knabe piano is covered by a patent. The defendants have the right to make that instrument, and to endeavor to cause the public to believe that their pianos embody all the excellencies of the pianos made at Baltimore. They may not represent that their piano is made by the complainant, or its predecessor, or that they are the successors in business of complainant or its predecessors. Observing these restrictions, however, they may state that they have embodied in their instrument all the skill and genius of the original makers of Knabe pianos. It would be a grievous perversion of the law of unfair trade competition to use its doctrines so as to convert a trade-name into a patent right and thus give to it "a monopoly more effective than that of the obtainable patent in the ratio of eternity to 17 years." Pope Automatic Merchandising Co. v. McCrum-Howell Co., 191 Fed. 979, 982, 112 C. C. A. 391, 40 L. R. A. (N. S.) 463 (Baker, J.). Much of the argument in appellee's brief, and, indeed, some language of the courts, tend to this conclusion. It is said that there is and can be only one Knabe. Judge Hollister, in his opinion in the case in the Southern District of Ohio, speaking of the words "Knabe Bros., Cincinnati," at first used on the fall-board of defendant's pianos, said: "The name indicates that it is a Knabe piano. It is not a Knabe piano." If such expressions mean that there can be only one Knabe piano made by complainant or its predecessor in business, the statement is an obvious truism; but if they mean that no one else has the right to make and sell a piano which embodies every feature of the piano made by complainant and its predecessor in interest, and also induce the public to believe that the second piano embodies all the excellencies of the first, then the statement goes beyond the law as it is now established by the highest court. Complainant here is presented, to some extent, with the same difficulties as the plaintiff in White v. Trowbridge, 216 Pa. 11, 22, 64 Atl. 862, 866 (cited in the Hall Safe Case, 208 U. S. 559, 28 Sup. Ct. 350, 52 L. Ed. 616), where the court says:

"In fact, the real difficulty in this case is that the plaintiffs have reason to fear, not that the public will be deceived, but that if the fact becomes known.

that the defendant is engaged in the same business the public will purposely purchase the goods made by him for the reason that he was and is the originator" of the article.

Against this difficulty however, complainant is entitled to no aid from the courts.

The bill sets up a right to the word "Knabe" as a registered trademark. But the word being incapable of use as a trade-mark, the claim seems to have been abandoned at the trial, and in this court. In the affidavits some attempt is made to show improper oral representations. This evidence, however, is so feeble and untrustworthy that it would not entitle the complainant to relief. The case must therefore stand here, as it stood in the trial court, upon the advertisements. The trial court was justified in holding that these violate the rights of complainant, and fall short in performing the duty of the defendant to warn. We are of the opinion, however, that the injunction is subject to two objections: (1) Its language is too general. (2) Its restraint is too broad.

[5] In the generality of the language the order falls under the same condemnation as the Supreme Court imposed upon similar decrees of the trial court in the Hall Cases. Business cannot be conducted under a suspended sword. The manufacturer must depend upon sales agencies in disposing of his product. In a field where competition is so fierce as in the piano business, no agent will undertake the sale of an instrument if he is likely to be haled into court and possibly subjected to punishment for contempt for violating an injunction whose language is so general as as leave the acts which will constitute its violation open to serious doubt. Neither ought a court of equity to clothe an angry litigant with a writ which will enable him to keep his competitor and the subagents of his competitor, in terror of a proceeding for contempt because of the indefiniteness of the injunction. Business cannot be carried on under such conditions. Courts of late have shown a keen appreciation of this hardship, and have formulated their injunctions in such cases in specific terms. L. E. Waterman & Co. v. Modern Pen Co., 197 Fed. 534, 117 C. C. A. 30; G. & C. Merriam & Co. v. Saalfield, 198 Fed. 369, 378, 117 C. C. A. 245; Dr. A. Reed Cushion Shoe Co. v. Frew, 162 Fed. 887, 89 C. C. A. 577; Herring-Hall Safe Co. v. Hall's Safe Co., 208 U. S. 554, 560, 28 Sup. Ct. 350, 52 L. Ed. 616.

In the advertisements we think defendant's zeal as an advertiser got the better of its duty as a warner. The facts which it was bound to point out are pointed out feebly and indirectly, and are involved in other language likely to cause the public to believe that its pianos were made by the complainant or its predecessors, or that defendant was the successor in business of complainant, or its predecessors. When it comes to performing its duty to warn, defendant should lay aside its character as an advertiser and direct its attention and the attention of the public unequivocally to the three facts specified above. It may be that in performing this duty defendant will be compelled to advertise complainant's business. That is because the difference between two things cannot be pointed out without bringing both things clearly before the mind. The difference between complainant's manufacture and

defendant's requires that both manufactures be presented clearly and explicitly. Defendants' duty to the public and to the complainant can be performed in no other way. It should assume this burden and not dodge it or equivocate. Its own trade welfare as well as justice to the complainant, demands the faithful performance of this duty.

Following the direction in the Hall Safe Case, 208 U. S. 560, 28 Sup. Ct. 350, 52 L. Ed. 616, we think the decree should have run substantially as follows:

"The defendants are restrained and enjoined from using the name 'Knabe' (either alone or in combination in corporate name), in circulars, catalogues or advertisements, unless accompanied by information that defendant is not the original William Knabe & Co., or William Knabe & Co. Manufacturing Company, or the successor to either, and that defendants' pianos are not the product of the last named concerns or their successor, the American Piano Company.

"It is further ordered and decreed that for the purpose of distinguishing defendants' manufacture from complainant's, the defendants shall insert in their circulars, catalogues and advertisements, a notice substantially as follows, and in form as conspicuous as the body of such circulars, catalogues or advertisements:

"Notice.

"The Knabe piano was made from 1837 to 1889, at Baltimore, by William Knabe & Co. In 1889 this firm was incorporated as William Knabe & Co. Manufacturing Company, and continued under that name until 1908, when it sold all its property, good will, and trade-name to the American Piano Company, which has since been, and now is, carrying on said business at Baltimore.

"Ernest J. Knabe, Jr., and William Knabe III learned the business from their father, Ernest Knabe, who had charge of it from 1864 to 1894. They were president and vice president of the above companies from 1898 to 1911. In the latter year they withdrew from the American Piano Company and organized the Knabe Bros. Company, and began making pianos in Cincinnati.

"The piano made at Baltimore has been, and now is, known to the trade as the 'Knabe' or 'William Knabe & Co.' piano. The piano of the Knabe Bros. Company is named 'The Knabe Bros.' piano. It is a new manufacture, and has no connection with the pianos made at Baltimore.

"The defendant shall also print the above notice on paper at least 18 inches by 2 feet in size, and frame the same, and place one such notice upon their pianos in all salesrooms in which the same are offered for sale."

Oral representations, while not required to be as explicit as those in writing, should be in harmony with the provisions of the above decree.

The notice, when formulated, should appear in identically the same language in all advertisements, catalogues, and circulars. In that way the public will be both warned and instructed.

In connection with the above notice, defendant should be at liberty to state fully the whole truth in regard to its manufacture and that of complainant. It may explain to the public that Ernest J. Knabe, Jr., and William Knabe III are the only descendants of the original founders of the Knabe piano business, bearing the name Knabe, now engaged in that trade. They may point out fully how the business was built up by their grandfather, father and themselves, and how they received their training and education under their father. They may likewise point out, if that is the fact, that many of the skilled mechanics who were engaged in the business at Baltimore, have joined them at Cin-

cinnati, and otherwise point out any fact which will be favorable to their instrument, and unfavorable to that of complainant. Such advertising does not tend to confuse the public mind as to the difference between defendants' manufacture and complainant's, but simply to give the impression that defendants' instrument is superior to the piano now made by the complainant. The defendants have the undoubted right as a part of the law of trade competition, to create that impression.

We come next to the second objection to the order of the trial court that its restraint is broader than complainant's right. It enjoins defendants from making "any statement or representation calculated to induce the public to believe that the pianos manufactured by the Knabe Bros. Company are Knabe pianos." The words "Knabe pianos" as here used, have the same duplicity as the term "original" above discussed. They may mean pianos manufactured by complainant and its predecessors at Baltimore. With that significance the injunction does not extend beyond complainant's rights. But these words have another meaning. According to that they point to a piano having certain qualities—a peculiar scale, sounding board, lyre and acoustic properties— the elements which gave the Knabe piano its individuality among pianos. To the public the words "Knabe piano" meant chiefly an instrument possessing these qualities. Until defendants began business there had been only one maker of these pianos, and it is probable that the public knew little if anything of complainant or its predecessors. It was the kind of instrument, and not the maker, to which public notice had thus far been directed. Defendants have the same right as complainant to embody in their instrument these distinctive features of the Knabe piano, and to advertise to the public that they have done so. Note the things which Mr. Justice Holmes, speaking for the court in the Hall Safe Cases, said defendants here might say in connection with their piano trade. They may say that they are the sons and grandsons of the founders of the Knabe piano. But this statement, when made in defendants' piano business, is clearly "calculated to induce the public to believe" that defendants' instruments are "Knabe pianos" in the sense that they embody their excellent qualities. Defendants may show that they were trained by their father in the art of making the Knabe, and that they themselves had charge of the business for years. Hardly anything, however, could be better "calculated to induce the public to believe" that the pianos which they are now making, embody the distinctive features of the Knabe. The vice of the injunction is that it is not leveled directly at forbidding the defendants from representing the pianos manufactured by them, to have been manufactured by complainant or its predecessors. It is only necessary to compare the order appealed from with the order of the Supreme Court in the Hall Safe Case, to see how far the former departs from correct principle. The Halls were restrained from using their name in the safe business unless accompanied by information: (1) *That defendant is not the original Hall's Safe & Lock Company, or its successors;* or, (2) *That its safe is not the product of the last-named company or its successor.* It is palming off the article made by defendant as having been made by

complainant which constitutes the wrong of unfair competition. Such has been the uniform holding of the Supreme Court.

"Relief in such cases is granted only where the defendant * * * represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacture."

This language from the earliest case (Goodyear Co. v. Goodyear Rubber Co., 128 U. S. 598, 604, 9 Sup. Ct. 166, 32 L. Ed. 535) is substantially the same as that found in the latest:

"The essence of the wrong in unfair competition consists in the sale of the goods of one manufacture or vendor for those of another." House Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 140, 25 Sup. Ct. 609, 614 (49 L. Ed. 972).

The wrong consisting of misrepresentation as to the origin of manufacture, the injunction should be leveled directly at that wrong, and not be expressed in equivocal language so as to enable complainant to say that defendants may not make any statement calculated to induce the public to believe that their instruments embody the merits of the Knabe pianos.

[7] In the trade conflict between these parties complainant has powerful advantages. It has succeeded to the manufacturing plant, the skilled workmen, and the long-established business connections which have created the Knabe piano, given it its good name, and placed it in every community where such instruments are used. It also has exclusive right to use the name Knabe in trade, without qualification or explanation. These are advantages which will be potent in convincing the public that the pianos made by complainant are superior to the instruments of any other maker who attempts to build a piano possessing the qualities of a Knabe. On the other hand, notwithstanding the teaching of some scientists that acquired talents do not pass by heredity, most of mankind probably still believe that they do; and defendants have the right to appeal to that belief and urge that they have inherited the genius of their father and grandfather. They may claim that these talents have passed to them not only by blood, but by the years of training which they received under their father's tuition. They may also relate that they had exclusive charge of the business of making the Knabe piano for thirteen years, and maintained its excellence and enhanced its good name. In the trade conflict, based upon these opposing arguments, the courts ought to hold an even hand, and not formulate their writs in such language that either party can make a wrongful use of them as a part of the weapons of trade.

It seems scarcely necessary to say that nothing done in this suit can in any way affect any decree entered in the suit in the Southern district of Ohio.

The trial court is directed to modify its order so as to conform to the views here expressed. Neither party shall recover costs in this court.