## SOCIETE VINICOLE DE CHAMPAGNE v. MUMM CHAMPAGNE & IMPORTA-TION CO., Inc.

District Court, S. D. New York.
June 26, 1935.

C. P. Goepel and E. C. Root, both of New York City, for plaintiff.

Wayne Johnson, of New York City (Lyle T. Alverson and Mark J. Ryan, both of New York City, of counsel), for defendant.

HULBERT, District Judge.

Motion for an injunction pendente lite.

This action was commenced January 30, 1934.

The facts developed by this litigation were stated at length by Judge Woolsey on motions to strike out certain defenses and a counterclaim (D. C.) 10 F. Supp. 289, 294.

He said: "The defendant asserts the right of using the name chosen for it by its incorporators and denies any confusion of goods. Those issues remain to be decided hereafter."

The court is now called upon to do so.

The prayer of the bill of complaint is that the use of the trade-names and trade-marks "The Mumm Champagne & Importation Co., Inc.," "Mumm," or "Mumm's" or "Mumm & Co.," may be declared an infringement of plaintiff's trade-names and trade-mark rights, and that the use by defendant of the trade-names and trade-marks complained of, or in any way connected with the sale by defendant of champagnes or sparkling wines, or the like, may be declared unfair means of competing with plaintiff, and that defendant be perpetually enjoined and restrained from infringing plaintiff's trade-names and trade-marks, or using any colorable imitation thereof in its corporate name, or from using the name "Mumm" in its corporate name, and from any acts of unfair competition; and for the surrender of all bottles having thereon labels marked "Mumm & Co." and "Mumm" or such labels in their possession or under their control for destruction in accordance with the provisions of the Federal Trade Mark Act 1905, as amended, 15 USCA § 81 et seq.

After an extended period of litigation, it became the settled law that every one has the right to use his own surname honestly in his own business, and that it could not be appropriated as a trade-mark by any one person as against others of the same name, *except* (a) where a fraud upon another is manifestly intended, or (b) where he has assigned or parted with his right to use it.

Complainant relies upon the so-called ten-year clause (section 5) of the Trade Mark Act of February 20, 1905 (as amended March 2, 1907, Feb. 18, 1911, January 8, 1913, March 19, 1920, and June 7, 1924), title 15 USCA § 85, but in Thaddeus Davids Co. v. Davids Manufacturing Co., 233 U. S. 461, 34 S. Ct. 648, 652, 58 L. Ed. 1046, Ann. Cas. 1915B, 322 (1914), referring specifically to said act, the court said: "Where the mark consists of a surname, a person having the same name and using it in his own business, although dealing in similar goods, would not be an infringer, provided that the name was not used in a manner tending to mislead, and it was clearly made to appear that the

goods were his own, and not those of the registrant."

■ Peter Arnold Gottlieb Hermann Mumm established the business of fermenting champagne *at Reims,* France, in the year 1827, under the name of P. A. Mumm & Co.

Jacob George Hermann Mumm, a son of Peter, changed the name to G. H. Mumm & Co. in 1856.

In 1904, Walther Mumm, his brother George Hermann, and their mother, all German subjects, succeeded to and continued the copartnership of G. H. Mumm & Co.

In December, 1914, the French Sequestrator seized all of the assets of said firm located within the jurisdiction of France and continued the business until August 11, 1920, when the property so sequestered was sold by the French Liquidator and acquired by the plaintiff, previously incorporated for that purpose.

In 1911 a corporation had been formed under the laws of the state of New York under the name of the Mumm Champagne & Importation Company, Inc., to take over the agency formerly conducted in New York, by one De Bary. Upon this motion plaintiff asserts that said corporation was organized by Georges Robinet, the president of the plaintiff, who, it is claimed, was then and had been since 1904 the general manager of G. H. Mumm & Co. Walther Mumm, disputing that contention, admits the New York Company was formed by Robinet, but alleges he acted under the directions of Hermann Mumm. At all events, the American company sold, exclusively, the output of G. H. Mumm & Co. imported into the United States from France, until it was seized by the American Alien Property Custodian and dissolved in 1919 by him. If he distributed its net assets among the three German partners of G. H. Mumm & Co., that was an administrative act and does not affect the disposition of the question here involved.

According to French law, only wine made in (or of grapes from) the Champagne Province can be exported from France as champagne.

The name "Mumm" had been registered as a trade-mark in France, England, and the United States, and the labels used on all bottles of wine produced by G. H. Mumm & Co. at Reims bore labels including the trade-mark name "Mumm" and thus identified that wine as the product of the Champagne District of France made and bottled at Reims by G. H. Mumm & Co.

In a decision (October 24, 1921) the Mixed Arbitral Tribunal created under the Treaty of Versailles ordered Hermann and Walther De Mumm not to use the words "champagne," "Reims," "Cordon Rouge," "Cordon Vert," and "Eagle," etc., but confirmed the right to the use of their patronymic, Mumm, and required the plaintiff herein to display after "G. H. Mumm & Co." on its labels the words "Successors, the Societe Vinicole de Champagne."

In 1922 Hermann and Walther De Mumm organized, at Berne, Switzerland, and at Frankfort on the Main, Germany, two firms known as Mumm & Co. and began producing and selling champagne wines.

A second proceeding, of the same nature, was thereupon begun by this plaintiff, and on December 16, 1923, further restrictive orders of like tenor were made by the Mixed Arbitral Tribunal.

The plaintiff began a third similar proceeding on August 14, 1930, and during the pendency thereof, an agreement was made between it and the Mumm copartners for private arbitration, according to the French Civil Code. *On July 11, 1932,* a decision was rendered permitting the copartners to manufacture champagne again in Epernay, France, and use the name Mumm & Co. on their goods provided it was followed with a statement of the date the firm was formed and changing their labels in certain other respects.

The plaintiff herein refused to accept this decision claiming that the Mumm copartners were not living up to the decision of the arbitrators and pressed the third proceeding then pending before the Mixed Arbitral Tribunal, which on November 23, 1933, made a decision (the German member dissenting) voiding the decision of the arbitrators under the French Civil Code and held that the true patronymic name of Hermann and Walther De Mumm was "Mumm Von Schwartzenstein," and requiring the use of that designation for commercial purposes in the future. On April 17, 1935, the French Civil Tribunal of the Seine (Third Chamber) nullified said determination of July 11, 1932.

Eleven years after Mumm & Co. was established at Berne and Frankfort on the Main, Walther De Mumm announced that the Mumm Champagne & Importation Company, Inc., had been *reincorporated* in

New York. At first it sold "Sparkling Wines" from Germany. Plaintiff submits affidavits to support its contention that the importation and sale of these wines produced confusion in the mind of the public, but I am not impressed by the facts set forth. It does appear that upon certain occasions stickers were provided bearing the words "Mumm Champagne" and these were affixed covering the words "Sparkling Wine," but the bottles bore a label stating content was a product of Eltville, Germany. Later, however, the defendant sold a product of Mumm & Co. bearing the words "Epernay, France," with the words "Mumm Champagne" of its corporate name so arranged in exaggerated letters, as to readily mislead the purchaser. Epernay is in the Champagne District of France, but the label does not proclaim the content as a product of Epernay. The plaintiff submits proof that the sheriff was unable to locate Mumm & Co. at any address in Epernay, and Walther Mumm does not state where in Epernay it is located.

When plaintiff bought the assets of G. H. Mumm & Co., it claims to have acquired all the "blend books" and record books back to 1827; that prior to the outbreak of the World War, Georges Robinet had principal charge of tasting the wines and supervising their manufacture, although, Robinet avers, "final decision in respect thereto was left to one of the co-partners, who, however, relied very largely, if not entirely, upon my judgment in the years prior thereto as far back as 1904."

To this Walther Mumm replies:

"The most important function of my brother and myself in conducting the firm's business was the annual rite of tasting and blending the new vintage. The quality of champagne wines depends upon an infinite variety of factors. The amount of sugar and acid in the grape varies from year to year according to the amount of annual sun and rainfall. These factors in turn influence the taste and the rapidity of fermentation. More or less liqueur must be added at the proper time according to the factors encountered. Racking and fining are varied to meet the necessities of each year's problems. The current vintage is not entirely produced from the current crop; it is blended to a greater or less degree with prior vintages. Apperception of the amount, character and quality of all of these things, and what to do in respect of them, is a matter of peculiar ability and judgment.

"Mumm champagne as made by my great grandfather, my grandfather, my father, my brother and myself for these 108 years, is a unique and distinct product. To be sure, other masters produce good champagne wines that are enjoyed, esteemed and properly praised. But those wines are not Mumm wines, because Mumm wines are, and in the nature of things can be, made only by Mumm, according to the tradition so long ago established by my forebears and so firmly followed since establishment. Other wines may simulate Mumm wines by design or accident, as a proficient student may simulate the work of his tutor; others may produce estimable wines which will receive great favor, but what they produce is their own, and not properly to be charged or credited to another."

Referring to the assets seized by the French Sequestrator, Walther Mumm alleges: "However, they could not, and therefore they did not, seize the personal skill, ability and reputation of my brother and me. That remains with us. And everything which the French seized they sold in 1920 to the Societe Vinicole de Champagne, the French corporation which brings this suit against my company. The sum received therefor was not paid to us but was 'credited' on the unliquidated war debt of the German nation as established by the Treaty of Versailles."

The moving affidavits do establish conclusively that defendant has orally represented to customers that plaintiff has purchased merely a name and a label, but does not sell "the real stuff," which the defendant professes can only be produced by the copartners Hermann and Walther Mumm. This has been stressed in advertising appearing in railroad timetables stating:

" 'Mumm's Champagne' is genuine only when labelled White Top Black Top and bearing Coat of Arms of Mumm family."

"The 'White Top' only assures traditional Mumm quality."

Walther Mumm attempts to explain these have been printed and circulated by the president of the Mumm Champagne & Importation Company of New England, without his consent or approval. This excuse is not persuasive.

It is my conclusion that the incorporation of the defendant under its existing name was not in good faith and that it is not using the name "Mumm" in a reasonable and honest manner and tends to con-

fuse and mislead the public. The motion will be granted to the extent of restraining the use of the name "Mumm" without proper restrictions. Stix, Baer & Fuller Dry Goods Co. et al. v. American Piano Co. (C. C. A.) 211 F. 271, page 276, and cases there cited.

Settle order for Friday, June 28, 1935, at 11:00 a. m.