## G. H. MUMM CHAMPAGNE et al. v. EASTERN WINE CORPORATION.

District Court, S. D. New York.
Oct. 14, 1943.

Beekman Aitken, of New York City, for plaintiffs.

Mock & Blum, of New York City, for defendant.

HULBERT, District Judge.

This action is for trademark infringement and unfair competition; the relief sought is an injunction, an accounting, and damages.

Cross motions for summary judgment present, as the chief issues, (1) capacity to sue; (2) infringement, and (3) unfair competition.

G. H. Mumm Champagne (Societe Vinicole de Champagne, Successors) and Associates, Incorporated, hereinafter called Importer, is a Delaware corporation having a place of business within this district.

Societe Vinicole de Champagne, hereinafter called Producer, is a corporation organized under the laws of the Republic of France.

The historical background of Mumm's Champagne is set forth in considerable detail in Societe Vinicole De Champagne v. Mumm Champagne & Importation Co. Inc., D.C., 11 F.Supp. 208; Id., D.C., 13 F.Supp. 575.

Peter Arnold Gottlieb Hermann Mumm established the business of fermenting champagne at Rheims, France, in the year 1827, under the name of P. A. Mumm & Co.

Jacob George Hermann Mumm, a son of Peter, continued the business changing the name to G. H. Mumm & Co., in 1856.

In 1904, Walther Mumm, his brother George Hermann, and their mother, all German subjects, succeeded to and continued the copartnership of G. H. Mumm & Co.

In December, 1914, the French Sequestrator seized all of the assests of said firm located within the jurisdiction of France and continued the business.

On August 11, 1920, the liquidators reported the public sale of the properties of the firm of G. H. Mumm & Co., on July 28, 1920, which sale, by its terms, covered all the seized assets of said firm including all the trademarks of the firm and the same were acquired by the Producer. Societe Vinicole De Champagne v. Mumm Champagne & Importation Co., Inc., supra.

The United States registered trademarks involved in this action are:

No. 8,638 granted September 13, 1881. to G. H. Mumm & Co., of Rheims, France, covering the arbitrary words "Cordon Rougeh" impressed on a circular paster or label, in previous use for four years under registration No. 4473 March 20, 1877.

No. 177,419, granted December 18, 1923, to Societe Vinicole de Champagne, of Paris, France; this trademark covers the words "Cordon Rouge" impressed upon a red ribbon stripe upon a white label, diagonally from the upper left to the lower right thereof. (This trademark was also registered in France No. 204157 August 18, 1921.)

No. 312,653 granted May 1, 1934, to Societe Vinicole de Champagne, Paris and Rheims, France, for a similar diagonal red stripe containing the words "Cordon Rouge."

In the application for this trademark (March 16, 1934, Ser. No. 348,727) the applicant makes the following statement: "G. H. Mumm Champagne (Societe Vinicole de Champagne, Successors) and Associates, Inc., La Maison Francaise, 610 Fifth Ave., New York, N.Y., is designated as the party upon whom process or notice of proceedings affecting the right to ownership of said trade-mark brought under the laws of the United States may be served."

No. 342,560 granted January 19, 1937, to Societe Vinicole de Champagne, Paris and Rheims, France, covering a segment of a circle or arc bearing the words "Cordon

Rouge" (registered in France as No. 305,-182, December 11, 1935), contains a similar authorization to the domestic plaintiff.

No. 395,907 granted June 16, 1942, to G. H. Mumm Champagne and Associates, Incorporated (Societe Vinicole de Champagne, Successeur), New York, N.Y., covering a similar diagonal red stripe without, however, the words "Cordon Rouge" appearing thereon.

It is stated in the applications for this last mentioned trademark (dated January 27, 1942, Ser. No. 450,511) "the trade-mark has been continuously used and applied to said goods in applicant's business since March, 1883."

During the month of January, in the year 1934, the domestic plaintiff became, and has ever since continued to be, and still is, the agent for the United States for the foreign plaintiff for the sale and distribution of champagne wines manufactured and imported into the United States of America by the Producer.

By the terms of a contract dated January 1, 1938, the Importer became the sole agent of the Producer in the United States with the exclusive right to purchase wines from the Producer for resale in the United States.

In 1939 this contract was modified, upon consent of the parties, by substituting another agent for the Producer in the Pacific Coast area.

The defendant, incorporated, in 1934, is a purveyor of domestic champagne. Its president avers that in September, 1937, it requested the Empire Lithographing Co., Inc., to design some labels for use on wines. One of the designs thus prepared included a diagonal red stripe which, however, was unlike that of the plaintiffs' in at least two respects; (1) It was narrower, and (2) it extended from the upper right hand corner to the lower left hand corner of the label.

Prior to giving an order to print 100,-000 labels, which were delivered to the defendant on October 15, 1937, the defendant submitted the original sketch to the Federal Alcohol Administration (hereinafter referred to as the FAA), which refused to give its final approval until the printed label was submitted. When this was done, the FAA objected to the use of the words "Chateau Martin" upon the top of the label because the word "Brand" did not follow, and the labels were, therefore, modified by elimination of the words "Chateau Martin" and the label as ultimately approved by the FAA November 4, 1937, bore no brand name.

Defendant sold and delivered in interstate commerce, principally in New York and New Jersey, 1,027 cases of sparkling wines and 50 cases of sparkling Burgundy bearing these labels and since September, 1937, has "continuously sold champagne in interstate commerce in the United States, put up in bottles which had labels *with a diagonal red stripe.*" (Italics mine)

But plaintiffs allege, and it is not denied, that since about January 1941, this stripe has been increased to a width equal to that of the Producer's stripe; its position was reversed so that it extended from the upper left hand to the lower right hand of the label (the same as plaintiffs') and bears the impress "Chateau Martin Brand".

This change, the defendant asserts, was made pursuant to regulations of the FAA because the defendant's domestic champagne has been made by the "Charmat" process, and such regulations require that when wine is made by such a process, the words "sparkling wine" should immediately follow the word "champagne", and in order to conform with such regulations it was necessary to reverse the original direction of the red stripe.

This use of the diagonal red stripe on the defendant's label is a clear infringement of the trademarks Nos. 177,419 and 312,653 of the foreign plaintiff.

The defendant's course of conduct is a patent evasion, is calculated to mislead the public, and subjects the domestic plaintiff to irreparable injury in respect to the unsold product of the Producer which it has on hand and which it has expended large sums of money to advertise and market. Clearly this makes out a case of unfair competition.

Since France is, at the present time, occupied by the armed forces of the German Reich, the foreign plaintiff must be deemed an enemy alien under the terms of the Trading with the Enemy Act, 50 U.S.C.A.Appendix § 1 et seq. However, under that Act an enemy alien is permitted to sue in our courts to enjoin the infringement of a trademark. Title 50 U.S.C.A.Appendix, § 10(g).

In paragraph 4 of the contract, however, the Producer covenants that it: "will protect and enforce its trademark rights in the United States against any infringement

thereof, and the Importer will promptly acquaint the Producer of any conduct by competitors believed to constitute an infringement of the Producer's rights, and of all facts in respect thereto, together with recommendations as to proposed procedure for the Producer's instructions and disposition, and any expenses for legal proceedings consequent thereupon will be borne by the Producer for the protection of the Producer's rights."

Because of conditions due to the existing war, the Importer is, and has been, unable to communicate with the Producer.

It might at this point be noted that the Producer owns 53% of the outstanding common stock and all of the preferred stock of the Importer.

■ It is a recognized rule of agency that: "In sudden emergencies unprovided for by the terms of the agency agreement, the agent, if unable to communicate conveniently with the principal, has the implied power to take whatever steps he reasonably believes to be necessary to protect or preserve the principal's property or interest, unless it has been specifically denied him." 2 C.J.S., Agency, § 99, subd. d. See also Restatement, Agency, Sec. 47.

■ It seems to be a logical deduction that an action by the agent to enjoin the infringement of the principal's trademark is essential to the preservation of the principal's property, since the trademark is being infringed, and to that extent the maintenance of this action by the foreign corporation will be sustained.

The court will not pass upon the validity of the trademark granted to the domestic plaintiff since its right of action against the defendant for unfair competition is sustainable. Plaintiffs' motion for summary judgment granted to the extent indicated, and defendant's motion denied.

■ There will be an interlocutory decree enjoining the illegal use by the defendant of the trademarks of the foreign plaintiff and for an accounting, but no recovery may be had by the foreign plaintiff for the duration of the war.

Settle order in accordance with the provisions of Section 10(g) of the Trading with the Enemy Act and submit suggested Findings of Fact and Conclusions of Law (Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c), and proposed interlocutory judgment.