STARK BROS. NURSERIES & ORCHARDS CO. v. STARK et al.

(District Court, W. D. Missouri, S. W. D. January 30, 1918.)

No. 18.

1. TRADE-MARKS AND TRADE-NAMES ⬅➡20—REGISTRATION OF TRADE-MARK.

Where a corporation, long engaged in the nursery business, registered under Act Feb. 20, 1905, c. 592, 33 Stat. 724, its trade-mark, previously adopted, consisting of the words "Stark Trees," the first word being superimposed upon the latter in a striking manner, such trade-mark is valid, and entitled to protection under the statute.

2. TRADE-MARKS AND TRADE-NAMES ⬅➡59(4)—PROTECTION—SCOPE.

Where complainant registered a trade-mark, consisting of the words "Stark Trees," the former being superimposed on the latter, and defendants sold trees under the label "William P. Stark Nurseries" in which the word "Stark" appeared on the dark background of a fruit tree, defendants were guilty of an infringement of the trade-mark; the protection extending not merely to the precise manner in which complainant used it on its label.

3. TRADE-MARKS AND TRADE-NAMES ⬅➡65—VIOLATION—DEFENSES.

Where it was the custom of complainant to brand its trade-mark on boxes or packages containing trees, and not on the trees themselves, defendants, who infringed complainant's trade-mark and followed the same practice, cannot defeat relief on the ground that the deception would not occur until after the purchaser had received the goods, for the purchaser at all events has the right to verify the source of the articles purchased, and it was an infringement for defendant to use a trade-mark which would convey to the mind of the purchaser the impression that he was acquiring trees from complainant.

4. TRADE-MARKS AND TRADE-NAMES ⬅➡97—INFRINGEMENT—UNFAIR COMPETITION.

Defendants, though they bore the name "Stark," which was part of the corporate name of complainant, which had long been established in the nursery business, while entitled to do business under their own name, will be enjoined from using an infringing trade-mark, or the word "Stark," on their labels, save in such a manner as would not indicate to the trade that their goods were those of complainant, or that they were complainant's successors.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. COURTS ⬥═292—FEDERAL COURTS—JURISDICTION—TRADE-MARKS.

Where complainant's trade-mark, registered under the act of 1905, was valid and had been infringed, the federal court has jurisdiction of a suit to enjoin defendant's infringement of its trade-mark, as well as unfair competition in connection with the infringement, notwithstanding defendants and complainant were both citizens of the same state.

In Equity. Bill by the Stark Bros. Nurseries & Orchards Company against William P. Stark and William H. Stark, trustees, doing business under the name and style of William P. Stark Nurseries. Decree for complainant.

John W. Matson, of Louisiana, Mo., and Andrew B. Remick, of St. Louis, Mo., for plaintiff.

Wilfley, McIntyre & Nardin, of St. Louis, Mo., and Pearson & Pearson, of Louisiana, Mo., for defendants.

VAN VALKENBURGH, District Judge. The complainant is a nursery corporation of long standing, located at Louisiana, Mo. It and its predecessors have been engaged in this business for approximately a century. It and its products have been 'widely known for many years and enjoy a national reputation. About 35 years ago it adopted the words "Stark Trees" as its trade-mark, and all its shipments have long been marked by a label in which the word "Stark" is superimposed upon the word "Trees" in striking and characteristic arrangement. June 24, 1913, this mark was duly registered under the 10-year clause of the act of 1905.

Defendant William P. Stark is one of the Stark brothers, and was for many years and still is a stockholder in the plaintiff corporation; and the defendant William H. Stark, son of William P. Stark, was formerly in the employ of the plaintiff, severing his connection therewith in April, 1912. Shortly thereafter, defendants formed the William Stark Nurseries, operated at first at Louisiana, Mo., and later under the present name, and at present, at Neosho, Mo. Defendants adopted a label, exploited in their catalogues and also attached to nursery and orchard stock shipped to purchasers, containing the following words:

On this label the word "Stark" appears prominently in white letters upon the dark background of a fruit tree; the balance of the label being printed in black letters. In this manner the word "Stark" is given special emphasis, and from its position the term "Stark Trees" is vividly suggested. Complainant brings its bill to enjoin this alleged infringement of its trade-mark, and prays an injunction, damages, and accounting for profits therefor, and also for unfairness in trade incidental thereto. Inasmuch as both plaintiff and defendants are citizens and residents of this state, the charge of unfair trade can be

sustained, if at all, only through the jurisdiction acquired by reason of the technical trade-mark involved.

[1, 2] That the plaintiff's trade-mark is a valid and subsisting one under the act of 1905 admits of no debate. Complainant had the right to register it, and, having registered it, is entitled to its protection as a valid trade-mark under the statute. Thaddeus Davids Co. v. Davids Mfg. Co., 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322; Rossman v. Garnier (C. C. A.) 211 Fed. 403, 128 C. C. A. 73; Schueler et al. v. Manitou Springs Mineral Water Co. (C. C. A.) 239 Fed. 593–602, 152 C. C. A. 427. Nor is that protection limited to its use when standing alone and the precise manner in which complainant has used it on its label. As said by Mr. Justice Hughes in Davids v. Davids, supra:

"The statutory right cannot be so narrowly limited. Not only exact reproduction, but a 'colorable imitation,' is within the statute; otherwise, the trade-mark would be of little avail, as by shrewd simulation it could be appropriated with impunity."

It is equally apparent that the defendants' device falls within this prohibited category and constitutes a palpable infringement. The substitution of the drawing of a tree for the written word is so obvious in the connection in which the marks are used as to afford little room for hesitation; nor does writing "William P." before the surname "Stark" legitimize the unwarranted appropriation, any more than the initials "C. I." before the word "Davids" were effectual in the case before the Supreme Court. There the name "Davids," as a label for ink, was the important word which had acquired a secondary meaning subsequently ripened into the technical trade-mark. Here the name "Stark," in connection with fruit trees, is the term which stamps the origin and ownership of the product. The case at bar differs radically from that of Pittsburgh Crushed-Steel Co. v. Diamond Steel Co. (C. C.) 85 Fed. 637, and same case under title Kann v. Diamond Steel Co. (C. C. A.) 89 Fed. 706, 32 C. C. A. 324, both as to the similarity of the respective marks, the circumstances of their respective use, and the element of confusion which, by this record, is shown to have been created.

[3] It is urged by defendants that the purchasers from complainant and defendants alike do not buy upon the faith of this trade-mark, and do not see it, if at all, until the trees have been shipped and reach their destination; that then the mark is found attached to the box or package containing the trees, and not to the trees themselves. This defense is unsound. Given a valid trade-mark, its use by another than the owner cannot be excused upon the ground that the purchaser in any case did not happen to see it and rely upon it prior to the initial act of purchase. He has the right to verify the desired origin of his goods by examination upon receipt. Complainant affixes its mark to its goods, or to the packages containing the same, as it said it would do in its statement to the Patent Office upon which that mark was registered, and it is a like use by any other than the owner that the law of trade-marks prohibits, irrespective of who may or may not make ocular examination thereof. In Moet v. Pickering, 6 Ch. Div. 770, Jus-

tice Sir Edward Fry sustained a charge of infringement and granted an accounting where the mark was branded on the cork of a champagne bottle, and could not be seen until the cork was drawn. There the same contention was made, and at first challenged the attention of the Justice, who said:

"How can a brand which is not visible till the cork is drawn be the subject of protection as a trade-mark? The spurious brand cannot be the means of inducing any one to purchase the defendant's wine, as the purchaser would not see it until after he had made the purchase."

Nevertheless, upon mature consideration, he had no difficulty in sustaining the mark and granting the relief prayed. Since this controversy arose, defendants have discontinued the exploitation of the mark in their catalogues and claim to have abandoned the use of the label in shipments. There is some evidence, however, that the shipping label has been employed since the period of such claimed abandonment.

[4] There can be no doubt that the defendants, for some time prior to the dates on which they severed their active connection with the complainant company, were exploiting their individual names and personalities through the literature of the complainant corporation and otherwise, and were engaging in other activities with a view to setting up a competitive business and of appropriating a portion of the prestige which had been acquired and which was being enjoyed by complainant. Since the establishment of defendants' business, their literature has pointedly aimed at such appropriation of the high reputation of the Stark name in connection with nursery products in Missouri—a reputation acquired by and identified with the complainant in this case. This statement, as well as the ruling of the court upon the issue of technical trade-mark, is supported and confirmed by the language of defendants themselves, taken from their catalogues and advertising matter:

"The name of 'Stark' has for nearly a century been associated with the nursery business of America, and for the last quarter of a century William P. Stark has made the name a sort of a trade-mark for big things in the nursery world. Now, with William P. Stark's great name and lifelong experience to direct affairs, and William H. to assist, the William P. Stark Nurseries are in a better position than ever to continue and broaden the Stark Nursery business in Missouri at their Stark City plant."

This statement was published while the nurseries of the defendants were newly established and comparatively in their infancy.

Again:

"Four generations of William Stark nurserymen. The commission men of South Water street looked sideways when William P. Stark commenced over 10 years ago to tell us of Delicious, Stayman, Winesap, Black Ben, Liveland Raspberry, and others.

"William P. Stark certainly knows what varieties for the commercial grower to plant, and what not to plant. Of course, the Starks have been doing just this sort of thing for 90 years or more, so it is no new thing to have the trade come around and back up Stark's judgment, as they have in the case of Delicious, Stayman, and others.

"William P. Stark is a real nurseryman and fruit grower. He doesn't pretend to be anything else. Of the four generations of William Starks, three are living to-day, and there was still another generation of Starks before the first William Stark engaged in horticultural work."

For a number of years prior to the inception of defendants' enterprise, the Delicious apple had become widely known as a fruit of very superior excellence. It had practically been discovered and the control of its propagation had been secured by the complainant company, by which it had been placed before the public, and under whose auspices its high reputation was builded and established. So close is the relationship between this fruit and its producer that this apple is rarely, if ever, spoken of other than as "Stark's Delicious." Defendants in their literature, after dealing with the origin of this fruit in an Iowa tree, in connection with which no credit is given to complainant, say:

"Two or three years after this two barrels were shipped to William P. Stark, who was ever on the lookout for something meritorious, and, immediately recognizing their superiority, commenced negotiations for their propagation. Only for William P. Stark, the Delicious apple might never have been known. It was William P. Stark who came to the rescue, saved the apple, and gave it to the pomological world."

"William P. Stark was the first to recognize the merits of this great apple. He named it 'The Delicious' and had the foresight and courage to propagate it and to urge growers to plant it."

While it may not now be true that any single nurseryman may claim the exclusive privilege of propagating and exploiting this apple upon the market, nevertheless, read in connection with the known history thereof, the language quoted is obviously intended and calculated to confuse the public respecting the identity of these rival nurseries. William P. Stark claims to have been the representative of complainant, through whom this fruit was originally acquired. This is denied by complainant. He further claims to have named the fruit because of its flavor and the impression made upon him when he first tasted it. It is undoubtedly true that at that time this defendant was one of the active members and an officer of the complainant corporation. His position is that he is a Stark, and that he was actively engaged in the operations which built the reputation of the Stark name in the nursery business. Conceding all this to be true, nevertheless it cannot be denied that whatever he may have accomplished in this regard was as a representative of the complainant corporation, in its name, and for its benefit, as one of others of that family and corporation similarly engaged. He cannot now draw to himself individual credit therefor, to the extent of invading the property rights of complainant, and of substituting himself for complainant, to the confusion of the public. He may not be denied the legitimate use of his name in business. He should observe the tests laid down by Judge Amidon in Stix, Baer & Fuller Dry Goods Co. et al. v. American Piano Co. (C. C. A.) 211 Fed. 271, 127 C. C. A. 639:

(1) "He may not affirmatively do anything to cause the public to believe that his article is made by the first manufacturer."

(2) "He must exercise reasonable care to prevent the public from so believing."

(3) "He must exercise reasonable care to prevent the public from believing that he is the successor in business of the first manufacturer."

The defendants' warnings to the public, to wit:

"We have heard of a man in your community who claims to be our agent. He is a fake.

"Look out for agents claiming to represent us.  They are frauds.

"No connection with any other concern.

"The William P. Stark Nurseries is not connected or related in any way with any other nursery with similar name"

—so far from absolving defendants from the charge of unwarranted encroachment, in point of fact, under the circumstances revealed by this record, really invite the public to regard the defendants as the original Starks, and all others of similar name as interlopers in the nursery business in Missouri.

As further evidencing the efforts of defendants to avail themselves of the established reputation of the Stark name in the nursery world, it should be noted that, for some years prior to the establishment of the William P. Stark Nurseries, the complainant company had widely featured in its advertisements the addresses "Stark, Missouri," "Stark-dale, Missouri," and "Stark Station, Missouri." The defendants, after leaving Louisiana, located their offices at a small town named Chester. Thereafter the name of this town was changed to Stark City, and within a short time defendants moved their offices to Neosho, Mo., where they are now located, and where their packing house is maintained. Stark City has been practically, if not entirely, abandoned, and yet, upon the infringing label the address "Stark City, Missouri," appears.

It is urged by counsel for defendants that complainant never maintained an office at Stark or Starkdale, Mo., and that neither these names nor that of Stark Station have any concrete connection with complainant's business. That, however, is not the point involved in this controversy. Those names were used in advertising to distinguish and localize complainant's business. The adoption of so similar a name as Stark City by defendants was obviously intended to introduce another element of confusion in the public mind. Counsel say in their brief:

"This name was changed by the Post Office Department upon the petition of the citizens of Chester, which was a little town on a new railroad that had been in existence only a short time."

It is true that a petition of citizens was lodged with the Post Office Department; but it was transmitted for that purpose by the defendant William H. Stark. The testimony of the defendants with respect to this incident was most unsatisfactory, and it was apparent to the court that the change of name was brought about at their instance and for the purpose charged in the bill.

The court has no doubt that the defendant William P. Stark is a nurseryman of experience and ability. It has no disposition to deny to him the proper use of his name in his business; but he should use it with such limitations as the circumstances and conditions presented by this record demand. The decision of the Supreme Court in the Davids Case seems peculiarly applicable here. On this point the opinion says:

"It is not necessary that, in exercising the right to use their own name in trade, they should imitate the mark which the complainant used, and was entitled to use under the statute, as a designation of its wares, or that they

should use the name in question upon their labels without unmistakably differentiating their goods from those which the complainant manufactured and sold."

[5] The complainant's trade-mark having been found valid, this court has jurisdiction of the parties and of the subject-matter, for the purpose of enjoining, not only the infringing of that trade-mark, but also all wrongful acts in the nature of unfair trade done in connection with the infringement which augment and aggravate the wrong. Jacoway v. Young (C. C. A.) 228 Fed. 630, 143 C. C. A. 87. The defendants will be enjoined from the use of the infringing label charged, or any colorable imitation of complainant's trade-mark in suit, from using the name "Stark City" upon its labels or tags attached to nursery stock, or packages containing the same, and from putting the word "Stark" prominently at the top of its labels, or elsewhere in connection with the business of producing and selling nursery stock, in such manner as will not unmistakably differentiate their goods from those which the complainant produces and sells.

Defendants will be required to account to complainant for damages sustained and for profits accruing during the period within which complainant's trade-mark is shown to have been infringed. A decree may be prepared accordingly.