COTY, Inc., v. PARFUMS DE GRANDE LUXE, Inc., et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

No. 164.

1. Trade-marks and trade-names and unfair competition ⬅️55—Showing actual wrongful intent in suits to enjoin unfair competition unnecessary.

In trade-mark cases the right to an injunction does not depend on a wrongful intent in fact, if infringement is disclosed; and the same reasons apply with equal force in suits to enjoin unfair competition, where the necessary or probable effect of defendant's conduct is to deceive the public and pass off his goods as those of complainant.

2. Trade-marks and trade-names and unfair competition ⬅️21—Priority of right to trade-mark in United States depends on priority of use here.

Priority of right to a trade-mark in the United States depends on priority of use in this country, and is not affected by priority of use in a foreign country.

3. Trade-marks and trade-names and unfair competition ⬅️33—Registered trade-mark is assignable.

A trade-mark, registered under Trade-Mark Act of 1920 (41 Stat. 535 et seq.), is assignable.

4. **Trade-marks and trade-names and unfair competition ⚮73(1)—Limitations of right to use one's own name.**  .

While one cannot be denied the legitimate use of his name in carrying on his business, he may not use it in a manner which invades the rights of others, by causing the public to believe that his article is made by the first manufacturer, and he must exercise reasonable care to prevent the public from so believing, or from believing that he is the successor in business of the first manufacturer.

5. **Trade-marks and trade-names and unfair competition ⚮95(2)—Court may grant preliminary injunction against unfair competition under bill for infringement of trade-mark.**  .

The law of trade-marks is a part of the broader law of unfair competition, and under a bill praying an injunction against infringement of a trade-mark, if on preliminary hearing, and without passing on the validity of the trade-mark, the court finds that defendant's conduct constitutes unfair competition, it may properly grant a preliminary injunction against it.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Coty, Inc., against the Parfums De Grande Luxe, Inc., and another. From an order granting a preliminary injunction, defendants appeal. Affirmed.

For opinion below, see 292 Fed. 319.

Barnes, Chilvers & Halstead, of New York City (Frank M. Halstead and Bernard C. McKenna, both of New York City, of counsel), for appellants.

Mock & Blum, of New York City, for appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This suit was brought to restrain the defendants from infringing a trade-mark. The court below has granted a preliminary injunction, upon the filing of a bond in the sum of $5,000, conditioned upon the payment of such costs and damages as may be incurred by any party who may be found to have been wrongfully restrained. The injunction restrains the defendants from using the name "Ernest Coty" in selling perfumes and toilet preparations, save in connection with the phrase "Not connected with the original Coty."

The plaintiff is a corporation organized under the laws of the state of Delaware, in January, 1923. It is the successor to the business, in the United States, of Francois Joseph de Spoturno Coty since the date of its incorporation. The trade-mark "Coty" was duly registered on October 4, 1921, in the United States Patent Office, being certificate No. 147,206. The defendant, Parfums De Grand Luxe, Inc., is a corporation organized under the laws of the state of New York. The defendant Coble is president of the defendant corporation.

Francois Joseph de Spoturno Coty is a citizen of France, and a manufacturer in that country of perfumes and face powders, and has been engaged in such business since 1905, during which time he has been selling his merchandise in the United States in packages bearing, in addition to other trade-marks, his surname "Coty." Ernest Coty is another French manufacturer of perfumes and toilet articles, and

engaged in business in France since 1917. He sells his face powders in packages bearing his full name "Ernest Coty," with the notation "Maison fondee en 1917," which packages bear labels and coverings different in color and in design from those of the other Coty. The plaintiff in January, 1923, became the sole and exclusive owner of the business of Francois Joseph de Spoturno Coty in the United States. The defendant Parfums De Grand Luxe, Inc., in November, 1922, acquired by contract the exclusive sales agency in the United States for Ernest Coty's products. The controversy centers about the packages of face powder, for, although Ernest Coty also manufactures and sells perfumes, the defendants have disclaimed any intention of selling such perfumes with the labels they now bear, or otherwise than with labels so differing in form and design from those of his competitor that there can be no mistake or confusion, due to any similarity in the labels or packages in which the goods are sold.

The plaintiff's predecessor in business has continuously exported to the United States perfumes, toilet water, powders, and other toilet preparations in general, which were manufactured by him in Paris during 1905, and continuously thereafter until January, 1923, when the plaintiff succeeded to his business. Due to the exercise of skill and care and the use of the best and purest ingredients, this business rapidly grew, until in the year 1922 it amounted to more than $5,000,000. For a number of years Francois Joseph de Spoturno Coty has been recognized as one of the leading manufacturers of perfumes, face powders, etc., in the world. It is alleged that when he engaged in this business in 1905 there was no other perfumer in any part of the world who had the surname "Coty," or who used that surname in any manner in connection with the sale of perfumes or toilet preparations, and that he was the first person who made that surname have any meaning whatever in the business of making, selling, and distributing perfumes and toilet preparations. The testimony in the record seems to establish the truth of these allegations.

The complaint alleged that the surname "Coty" had been prominently affixed to every container of his goods, and that "Coty" was his trademark, and that he was the only person who had ever used "Coty" to designate perfumes or other toilet preparations in any manner whatever in the United States, save for certain persons who attempted to infringe upon this trade-mark, but who were always compelled to stop as soon as notice of their infringement was secured, and before any infringing use had made any impression whatever upon the trade or upon the public. This very important allegation has no denial in the record, save the formal denial of lack of information. The truth of the allegation seems to us amply proven by the testimony in the record.

It appears that the collector of the port of New York has declined to permit the importation of perfumes, powders, etc., in containers upon which "Ernest Coty" appeared, unless the words "Not connected with the original Coty" were appended. An appeal from that decision was taken to the Secretary of the Treasury, who sustained the collector of the port. The record conclusively shows that the purchasing public has been deceived into buying the defendant's product believing that

it was the product of the plaintiff. The difference in the appearance of the defendant's containers from the containers used for the plaintiff's product has not prevented deception. It is sufficient for the purpose to refer to two of the affidavits, among others, which we find in the record. A manufacturing perfumer of more than 15 years' experience, and who was familiar with the buying habits of the public, which purchase perfume and toilet preparations, made the following statement:

"I state most positively that, if anybody independent of this plaintiff were allowed to sell perfumes, face powders, or the like under the name of 'Ernest Coty,' this would not serve to inform the public that they were not getting the original 'Coty' goods. because many people would think that the original 'Coty' was merely using his full name. and for the reasons before mentioned a variation in bottle, package, and label would be no protection. I state positively, from my experience in the trade and amongst the purchasing public, that not only the public, but even the trade, would be deceived by the use of the name 'Ernest Coty' upon its products, unless there was some clear designation that this Ernest Coty was not the original Coty."

And another perfume manufacturer of more than 20 years' experience, and who had no connection with the parties to this suit, and had no interest in the outcome of this litigation, made the following statement:

"If any concern other than the original Coty is allowed to use 'Coty' in any manner whatever upon its labels or containers, there would undoubtedly be deception and confusion. The first name or names of the original Coty, and even the fact that 'Coty' is a surname, is unknown to a large part of the trade and public, and merely using 'Coty,' with a first name like 'Ernest' or the like, would have absolutely no effect in avoiding deception and confusion. I may state, at this point, that the original Coty's perfumes have been sold to the public in the form of relatively small bottles of different types for a few years, and when I was shown 'Plaintiff's Exhibit, Defendant's Perfume,' and before I smelled the contents, my first impression was that this was the Coty perfume, which has had such a large sale in the United States for many years, and I am positive that the public generally would buy the 'Ernest Coty' perfume as and for the product of the original concern, and the same is true of the face powder marked 'Plaintiff's Exhibit, Defendants' Powder.'"

There are a number of affidavits in this record by persons who purchased perfumes marked "Ernest Coty," thinking that they were buying the original Coty's product, and who had never heard of more than one Coty in the business, and to whom the word "Coty" had no meaning whatever, except to indicate the goods of the original Coty. It never occurred to these purchasers that "Ernest Coty" was not the original "Coty." The affidavits make it plain that the difference in the containers and the name thereon of *"Ernest* Coty" has not prevented deception but has misled the trade and the public. And in cases of this character, if the deception of the ultimate purchaser is accomplished, it is sufficient ground for an injunction, whether or not the retailer is deceived. As this court said in Coty v. Prestonettes, 285 Fed. 501, 506:

"The plaintiff's products have been chiefly known to the trade and public by his trade-mark 'Coty,' which is an uncommon name in the United States, and in the telephone directory of the city of New York there is no other person by that name."

The importation of his goods into the United States began in 1905, and, as we pointed out in that case, his sales in this country in the single year of 1921 amounted to $3,000,000; and the sworn complaint in the instant case states, as already noted in this opinion, that in the year 1922 they "amounted to more than $5,000,000." He has built up, therefore, a very profitable and considerable business in this country. And in the United States the "Coty" perfumes mean one thing only—the products of the plaintiff's predecessor in title

At the time the business in the United States began, there was no other perfumer in any part of the world who used the surname "Coty" in connection with the production or sale or distribution of perfumes or toilet preparations, and he was the first person who made that surname have any meaning whatever in the business of making, selling, and distributing perfumes and toilet preparations. Ernest Coty began the manufacture of his preparations in Paris, France, six or seven years ago, and it does not definitely appear when his products were first brought to the United States. There is nothing in the record which shows that the importation of his goods into this country began earlier than September 20, 1922. It seems to us that under all the circumstances of this case, upon principle and upon the adjudicated cases, no error was committed in enjoining the defendant from selling or advertising his goods without inserting upon the containers or packages the words "Not connected with the original Coty" in letters of the same size, color, and print and prominence as the words "Ernest Coty." The word "original" does not in itself imply quality, but origin, and it serves to point out that the goods are not those of the manufacturer who was the first to produce and put on the market what the purchasing public know as "Coty" perfumes. It is not only necessary for the proper protection of that business and of the good will attached to it, but for the protection of the public against deception as well. Anything less would not make deception and injury improbable, and that "Ernest Coty" is not the original "Coty" whose name is identified with the perfume trade throughout the world is certain.

The complaint alleges, in paragraph XX, that the goods which the defendants have imported from France are made by a concern with whom one "Ernest Coty" is connected; but the plaintiff alleges that said Ernest Coty never has been and is not at the present time a bona fide manufacturer of perfumes and toilet preparations, but that he always has been a mere dummy, who had no knowledge of or skill in the business of producing perfumes and toilet preparations, and who was taken up by unscrupulous persons in France because of the fact that he had the same surname as the original Coty. The answer asserts that the perfumes which the defendant has imported from France are made in a factory which Ernest Coty owns, and that the goods are manufactured under his supervision, and it denies every other allegation contained in paragraph XX above quoted. It remains to be seen when the case goes to final hearing, if it reaches that stage, what the truth as to these allegations really is.

[1] In trade-mark cases, the right to an injunction does not depend upon a wrongful intent in fact, if infringement is disclosed. In Thad-

deus Davids Co. v. Davids, 233 U. S. 461, 471, 34 Sup. Ct. 648, 652 (58 L. Ed. 1046, Ann. Cas. 1915B, 322), Mr. Justice Hughes, speaking for the court, declared that in view of the statutory right it could not be considered necessary that the complainant, "in order to establish infringement, should show wrongful intent in fact on the part of the defendant, or facts justifying the inference of such an intent. * * * Having duly registered, under the act, the complainant would be entitled to protection against any infringing use." But, where an injunction is issued to prevent unfair competition, the evidence must disclose wrongful intent in fact, or justify that inference from the inevitable consequences of the act complained of. Elgin National Watch Co. v. Illinois Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365.

We think that the reasons for not requiring proof of a fraudulent intent in cases of infringement of trade-marks apply with equal force in cases of unfair competition, the basis of the remedy being substantially the same. In both classes of cases the injury is the same, regardless of the intent with which it is done; and while there has been some difference of opinion, it is thought to be the better view that, where the necessary and probable tendency of defendant's conduct is to deceive the public and pass off his goods as and for those of the plaintiff, especially where preventive relief only is sought, actual fraudulent intent need not be shown. See 38 Cyc. 784, where the cases are collected; Trappey v. McIlhenny Co. (C. C. A.) 281 Fed. 23, 27; Bissell Chilled Plow Works v. T. M. Bissell Plow Works (C. C.) 121 Fed. 357.

However that may be, we cannot resist the conclusion that upon this entire record a wrongful intent may be inferred as an inevitable consequence of the acts complained of. The record in this case discloses that in a case in which Francois Joseph de Spoturno Coty, the present plaintiff's predecessor in title, was plaintiff, and Coty Stores of America, Inc., was defendant, in the District Court for the District of Delaware, the defendant was held guilty of unfair competition in the sale of his products in this country through the "Coty Stores of America, Inc." What the record in that case disclosed we do not know, and the case now before us must be decided, not upon that record, but upon what this record discloses. The present record satisfies this court that the defendant has been guilty of unfair competition.

The record in the instant case shows that the plaintiff's predecessor in title began his business as early as 1905, and that the defendant began his in 1917. It also shows that while this case was pending in the court below proceedings were pending in the French courts against this defendant, growing out of the use of his trade-mark in France. It contains an "extract from the minutes of the Civil Court of the First Instance of the Department of the Seine, held in the Palace of Justice, in Paris," dated January 19, 1923. That tribunal found as follows:

"The accusation having been sufficiently established that these last-mentioned three persons during the years 1917, 1918, and 1919 committed the following acts in Paris and in all other places:

"First, made use of trade-marks having indications adapted to deceive purchasers as to the nature of the products;

"Secondly, sold and placed on sale products bearing trade-marks carrying indications adapted to deceive purchasers as to the nature of the products."

It thereupon entered an order sending the defendant Ernest Coty and two others "before the Tribunal of Correctional Police of the Seine to be judged according to law." It thus appears that the defendant's right to use his trade-mark "Ernest Coty" is being now challenged in his own country. We are not concerned with that, although the record from the French court was laid before the District Court without objection being made thereto. But the question we have to consider is whether the defendant is violating in the United States the rights of the plaintiff, or is engaged in unfair competition and misleading the purchasing public of the United States.

[2] We are not here concerned with the question as to what may be the rights of the defendant to carry on his business in France. Even if he had commenced his business in that country prior to the time that Francois Joseph de Spoturno Coty had established his, the latter's rights in the business in the United States would not be in the least affected thereby, provided the latter was the first to establish a market in this country for his goods. In United Drug Co. v. Rectanus Co., 248 U. S. 90, 100, 39 Sup. Ct. 48, 63 L. Ed. 141, it is pointed out that the federal courts have held that a prior use of a trade-mark in a foreign country does not entitle its owner to claim exclusive trade-mark rights in the United States as against one who in good faith had adopted a like trade-mark here prior to the entry of the foreigner into this market. And see Le Blume Import Co. v. Coty (C. C. A.) 293 Fed. 344, 350.

In Coty v. Prestonettes, Inc., 285 Fed. 501, 504, 505, this court had before it the Coty trade-mark No. 146,974 and No. 147,206, the latter of which is set up in the complaint in the instant case; and in Le Blume Import Co. v. Coty, 293 Fed. 344, the Coty trade-mark No. 146,974 was again before this court. In both of these cases this court held that an injunction should issue. In neither of these cases, however, was Ernest Coty involved or the goods manufactured by him.

The Trade-Mark Act of February 20, 1905, which has never been repealed, provided in section 5:

"That no mark which consists merely in the name of an individual * * * not written, printed, impressed, or woven in some particular or distinctive manner or in association with a portrait of the individual * * * shall be registered under the terms of this act: * * * And provided further, that nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several states, or with Indian tribes, which was in actual or exclusive use as a trade-mark of the applicant or his predecessors from whom he derived title for ten years next preceding the passage of this act." 33 Stat. pt. 1, c. 592, p. 724 (Comp. St. § 9490).

This act was construed by the Supreme Court in Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322. In that case the court said that it seemed to be clear "that the registration for which the statute provides was not designed to confer a monopoly of the use of surnames, or of geographical names, as such." The court went on to say that it was not to be supposed that Congress intended to prevent one from using his own name in trade, or from making appropriate reference to the town or city in which his

place of business is located. Congress has admitted to registration the names or terms belonging to the class under consideration simply because of their prior use as trade-marks, although they had not been such in law. Their exclusive use as trade-marks for the stated period was deemed in the judgment of Congress a sufficient assurance that they had acquired a secondary meaning as the designation of the origin or ownership of the merchandise to which they were affixed. The court also declared:

"It follows that, where the mark consists of a surname, a person having the same name and using it in his own business, although dealing in similar goods, would not be an infringer, provided that the name was not used in a manner tending to mislead, and it was clearly made to appear that the goods were his own and not those of the registrant."

The trade-mark upon which the plaintiff relies in the suit now before the court is the one registered under the Act of March 19, 1920, 41 Stat. 533, c. 104 (Comp. St. Ann. Supp. 1923, §§ 9516a–9516h). And in his application for its registration the applicant stated that his trade-mark had been continuously used in his business since the year 1905, and that the goods to which the trade-mark was appropriated were perfumes, toilet waters, and brilliantine, including perfumes for face powders, sachet powders, lotions, soap, and dentifrices comprised in class 6, chemicals, medicines, and pharmaceutical preparations. The Act of March 19, 1920, contained the following provision:

"(b) All other marks not registerable under the Act of February 20, 1905, as amended, except those specified in paragraphs (a) and (b) of section 5 of that act, but which have been in bona fide use for not less than one year in interstate or foreign commerce, or commerce with the Indian tribes by the proprietor thereof, upon or in connection with any goods of such proprietor upon which a fee of $10 has been paid to the Commissioner of Patents and such formalities as required by the said commissioner have been complied with: Provided, that trade-marks which are identical with a known trade-mark owned and used in interstate and foreign commerce, or commerce with the Indian tribes by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers, shall not be placed on this register."

[3] It is argued that a trade-mark registered under the act of 1920 cannot be assigned, and that therefore the complainant has no right in the trade-mark by virtue of its assignment. We cannot accede to that view of the act. Section 8 of the act, by providing for the recording of transfers of trade-marks, in effect authorizes the making of such transfers.

In L. E. Waterman Co. v. Modern Pen Co., 197 Fed. 534, 117 C. C. A. 30, this court had before it an injunction which restrained the defendant from using the name "A. A. Waterman" in connection with the sale of its pens, unless it substituted for its firm name the name "Arthur A. Waterman & Co.," and followed it by the words "not connected with the original 'Waterman' pens." This court modified the order, and struck out the word "original," and inserted in lieu thereof the words "not connected with the L. E. Waterman Co." In so doing it was said:

"We think that the suffix required in the decree appealed from tends to characterize the defendant's product as inferior to that of the complainant and is unduly prejudicial to it."

This case was affirmed by the Supreme Court, but no reference was made in the opinion to the striking out of the word "original," and that aspect of the case does not appear to have been argued before that court.

In Stix, Baer & Fuller Dry Goods Co. v. American Piano Co., 211 Fed. 271, 127 C. C. A. 639, the injunction granted in the court below required the defendants to state that their pianos were not "original Knabes," and forbade them from making any statement calculated to induce the public to believe that the pianos manufactured by them were Knabe pianos. The defendants had purchased from the grandsons of the original "Knabe," who founded the piano business of that name, their interests in the corporation which succeeded to the original business, and had organized a new corporation under the name of "Knabe Bros. Company," and continued manufacturing pianos. The Circuit Court of Appeals for the Eighth Circuit thought the form of the order in some respects objectionable, and directed its modification in some points. It did not, however, drop the word "original." It said:

"We think the decree should have run substantially as follows: 'The defendants are restrained and enjoined from using the name "Knabe" (either alone or in combination in corporate name), in circulars, catalogues, or advertisements, unless accompanied by information that defendant is not the original William Knabe & Co., or William Knabe & Co. Manufacturing Company, or the successor to either, and that defendants' pianos are not the product of the last-named concerns or their successor, the American Piano Company.'"

Then the court added that the defendants should be required to insert in their circulars, catalogues, and advertisements a notice at some length which clearly stated the distinction between the original Knabe pianos made at Cincinnati and Baltimore, and that the new pianos which the defendants made had no connection with those made at Baltimore. The order, as finally entered in the above case, is fully supported by the decision of the Supreme Court of the United States in Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 560, 28 Sup. Ct. 350, 352 (52 L. Ed. 616). In that case the court said, in speaking of the form of the decree which should be entered:

"We are not disposed to make a decree against the Halls personally. That against the company should be more specific. It should forbid the use of the name 'Hall,' either alone or in combination, in corporate name, on safes or in advertisements, unless accompanied by information that the defendant is not the original Hall's Safe & Lock Company, or its successor, or, as the case may be, that the article is not the product of the last-named company or its successors. With such explanations the defendants may use the Hall's name, and if it likes may show that they are sons of the first Hall, and brought up in their business by him, and otherwise may state the facts."

In Stark Bros. Nurseries & Orchards Co. v. Stark (D. C.) 248 Fed. 154, the facts were as follows: The complainant had registered its trade-mark under the act of 1905, which consisted of the words "Stark Trees." The defendants used the words "William P. Stark Nurseries." William P. Stark was one of the original Stark family, which had been engaged in the nursery business for 90 or more years and made the name well known in that business. He was a stockholder in the complainant company at the time of the suit, and was at one time employed by it. He set up a competitive business, and associated with him in it

his son, William H. Stark. The defendants in their advertising stated that they had "no connection with any other concern." District Judge Van Valkenburg held that, while the defendants were entitled to do business under their own name, the complainant was entitled to an injunction, and that the warning contained in the advertising matter, so far from absolving the defendants from the charge of unwarranted infringement, really invited the public to regard the defendants as the original Starks. An injunction was granted.

The case was carried to the Circuit Court of Appeals for the Eighth Circuit, 257 Fed. 9, 168 C. C. A. 221. That court held that the court committed no error in granting a perpetual injunction, but it modified the decree by requiring the defendants in their printed matter to state "that they are not of the original William Stark Nurseries." The words added to the injunction order may be found in the margin.[1]

It is well-settled law that the mere name of an individual cannot become a valid technical trade-mark as against others bearing the same name. In Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247 the Supreme Court declared that it was hardly necessary to say that an ordinary surname cannot be appropriated as a trade-mark by any one person as against others of the same name, who are using it for a legitimate purpose. In that case Mr. Justice Brown, who was writing for the court, said:

"A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property. If such use be a reasonable, honest, and fair exercise of such right, he is no more liable for the incidental damage he may do a rival in trade than he would be for injury to his neighbor's property by the smoke issuing from his chimney, or for the fall of his neighbor's house by reason of necessary excavations upon his own land. These and similar instances are cases of damnum absque injuria."

And see McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Singer Manufacturing Co. v. June Manufacturing Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Elgin National Watch Co. v. Illinois Watch

[1] "That the defendants may use their surnames in circulars, catalogues, or advertisements, but they must be accompanied by information that they are not of the original William Stark Nurseries, nor in any wise connected with the Stark Bros. Nurseries & Orchards Company, or any of its predecessors, under whatsoever name their business was conducted, and that their trees are not the product of any of these concerns, nor their successors. It is further ordered and decreed that, for the purpose of distinguishing defendants' trees from those of the complainant, the defendants shall insert in their circulars, catalogues, and advertisements a notice substantially as follows. and in form as conspicuous as the body of such circulars, catalogues, or advertisements:

" 'Notice.

" 'The "Stark Trees" have been the product of the nursery business of the Stark family since the year 1816, and this nursery is still carried on by successors of the original Stark family at Louisiana, Missouri; that William P. Stark is a member of that family and was connected for over twenty-five years with, and learned the business from, successors of the original Starks; that our business is conducted at Neosho, Missouri, and has no connection whatever with the nursery business of the Stark Bros. Nurseries & Orchards Company, at Louisiana, Missouri.' "

Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 134, 25 Sup. Ct. 609, 49 L. Ed. 972; Stix, Baer & Fuller Dry Goods Co. v. American Piano Co., 211 Fed. 271, 127 C. C. A. 639; William Rogers Manufacturing Co. v. Simpson, 54 Conn. 527, 9 Atl. 395.

[4] While one cannot be denied the legitimate use of his name in carrying on his business, he cannot do so in a manner which invades the rights of others. And the courts have held that:

(1) He may not affirmatively do anything to cause the public to believe that his article is made by the first manufacturer.

(2) He must exercise reasonable care to prevent the public from so believing.

(3) He must exercise reasonable care to prevent the public from believing that he is the successor in business of the first manufacturer. Stix, Baer & Fuller Dry Goods Co. v. American Piano Company, supra; Stark Bros. Nurseries & Orchards Co. v. Stark, supra.

In American Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 53 N. E. 141, 43 L. R. A. 826, 73 Am. St. Rep. 263 the court said:

" * * * The name of a person may become so associated with his goods that one of the same name coming into the business later will not be allowed to use even his own name without distinguishing his wares. Brinsmead v. Brinsmead, 13 Times Law R. 3; Reddaway v. Bonham [1896] A. C. 199, 210. See Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 204, 16 Sup. Ct. 1002; Cream Co. v. Keller, 85 Fed. 643. And so, we doubt not, may a geographical name acquire a similar association with a similar effect. Montgomery v. Thompson, [1891] A. C. 217. Whatever might have been the doubts some years ago, we think that now it is pretty well settled that the plaintiff, merely on the strength of having been first in the field, may put later comers to the trouble of taking such reasonable precautions as are commercially practicable to prevent their lawful name and advertisements from deceitfully diverting the plaintiff's custom."

In G. & C. Merriam Co. v. Ogilvie, 170 Fed. 167, 95 C. C. A. 423, the Circuit Court of Appeals for the First Circuit modified the restraining order entered below by directing the following words to be inserted therein:

"This dictionary is not published by the *original* publishers of Webster's Dictionary or by their successors."

And it required that those words should clearly and unmistakably appear in the title page of every volume of the dictionary published by the respondent or his successors or assigns. A petition for a writ of certiorari to the Supreme Court was denied. And in a case in the Circuit Court of Appeals for the Sixth District, G. & C. Merriam v. Saalfield, 190 Fed. 927, 932, 111 C. C. A. 517 referring to the terms of the injunction order in 170 Fed. 167, 95 C. C. A. 423 (the case above mentioned), the court said:

"It is not to be implied from what we have said that we regard the terms of the injunction ordered by the Circuit Court of Appeals for the First Circuit as an unreasonable or unjust limitation of the defendant's rights. On the contrary, we should be quite willing to adopt it, if the facts of this case should seem to call for it. The decisions of the Supreme Court in the cases of Singer Company v. June Company, 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, and Herring Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616, amply justify the provisions of such an order."

In the unreported case of Francois Joseph de Spoturno Coty v. Coty Stores of America, Inc., previously mentioned herein, and decided May 15, 1922, the District Court of the United States for the state of Delaware granted an injunction restraining the defendant from using the name "Coty" in advertising or otherwise in connection with perfumes or toilet preparations, unless accompanied by the name "Ernest" in equally prominent letters, "and from using the full name 'Ernest Coty,' except when immediately followed by the phrase 'Not the original Coty' in lettering of the same style and at least one-half the size used for the words Ernest Coty." It added:

"* * * But this shall not prevent the defendant's use of its corporate name, provided that it is accompanied by the said phrase in lettering of the same style and at least one-fourth the size used for the corporate name, nor shall it prevent the defendant from selling or offering for sale in its stores the products which it imports bearing the name 'Ernest Coty,' unaccompanied by the phrase 'Not the original Coty' provided that they do not bear the word 'Origan,' or any imitation thereof, and provided that there is at all times prominently displayed and permanently fixed in each such store, present or future, a placard or such number of placards as may be necessary, in order that at least one such placard may be seen and easily read from any point in each such store, bearing the words, 'We are not the original Coty and do not carry his products.'"

The doctrine announced in the above cases is analogous to that which is applied in the case of expired patents, as illustrated in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118. That case held that, after the expiration of the patents on the Singer machines, the name "Singer," by which such machines had come to be known, passed to the public with the cessation of the monopoly which the patent created, and that thereafter the public had the right to make the machine and affix the name Singer to it, but on condition that the one doing so must not deceive the public into thinking that it was manufactured by the original manufacturer. The court reversed the court below and remanded the cause, with directions to enter a decree perpetually enjoining the defendant:

"* * * First, from using the word 'Singer,' or any equivalent thereto, in advertisements in relation to sewing machines, without clearly and unmistakably stating in all said advertisements that the machines are made by the defendant, as distinguished from the sewing machines made by the Singer Manufacturing Company; second, also perpetually enjoining the defendant from marking upon sewing machines or upon any plate or device connected therewith or attached thereto the word 'Singer,' or words or letters equivalent thereto, without clearly and unmistakably specifying in connection therewith that such machines are the product of the defendant or other manufacturer, and therefore not the product of the Singer Manufacturing Company."

While in the Waterman Case, supra, this court substituted for the word "original" in the injunction order words "not connected with the L. E. Waterman Co.," and did so upon the theory that the word "original" tended to characterize the defendant's product as inferior to the complainant's, we do not feel ourselves constrained by that decision to eliminate the word "original" from the order now before us, and to substitute therefor the words "not connected with Coty, Inc." We have elsewhere herein expressed the opinion that the word "original," as

used in the order, does not necessarily imply inferiority. Moreover, the use of the word in the connection in which it is used in the order is sanctioned by the Supreme Court and the appellate courts generally, as we have seen in the cases above mentioned. There is no reason known to us why the practice in this class of cases should not be uniform in the federal courts.

The relief prayed for in the bill of complaint was in the following form:

"Wherefore the plaintiff prays that an injunction be issued under the seal of this court, and directed to the defendants and all persons doing business through or under them, or in privity with them, and their agents, servants, and employees, enjoining them from infringing upon the trade-mark 'Coty' in any manner whatsoever; that the said goods unlawfully imported or manufactured in the United States be seized and destroyed; that the defendants be decreed to pay unto the plaintiff the profits and damages resulting from the acts complained of, in addition to the costs of this action; and that such other and further relief should be granted as may be deemed proper."

The order entered by the court below is as follows:

"Ordered, adjudged, and decreed that, upon the plaintiff filing a bond by a duly authorized surety company according to law in the sum of $5,000, that a temporary injunction be issued under the seal of this court and directed to the defendant Parfums de Grande Luxe, Inc., its officers and agents, employees, and all persons acting through or under it, and to the defendant Walter B. Coble, enjoining them and each of them, until further order of this court, from using the word 'Coty' or the words 'Ernest Coty' in connection with the sale or advertisement of perfumes or toilet preparations, unless accompanied by information, in immediate juxtaposition therewith, that the defendant is not the original Coty; and it is further

"Ordered, adjudged, and decreed that this order shall be deemed to have been complied with, in so far as the marking of the packages of face powder or other toilet preparations is concerned, by inserting after the words 'Ernest Coty, Paris,' and before the words 'Maison fondee en 1917,' the words 'Not connected with the original Coty,' in letters of the same size, color, and print and prominence as the words 'Ernest Coty'; and it is    *    *    *"

Counsel for the defendant calls attention to subdivision fifth of equity rule 25, which reads as follows:

"Fifth, a statement of and prayer for any special relief pending the suit or on final hearing, which may be stated and sought in alternative forms. If special relief pending the suit be desired the bill should be verified by the oath of the plaintiff, or someone having knowledge of the facts upon which such relief is asked." 226 U. S. 655, 33 Sup. Ct. xxv.

The complaint was verified by the oath of the assistant secretary of the plaintiff, who swore that he had read the complaint and knew its contents, and that the same was true to his own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters he believed them to be true. This was a compliance with the rule above quoted.

[5] But counsel for defendant insist that the injunction granted is not based upon the trade-mark, but upon alleged unfair competition, and does not restrain the defendants from infringing a trade-mark, and therefore was not properly granted under the rules of the court. The law of trade-marks is a part of the broader law of unfair competition. United Drug Co. v. Rectanus Co., 248 U. S. 90, 97, 39 Sup. Ct.

48, 63 L. Ed. 141. And as this court said in Hercules Powder Co. v. Newton, 266 Fed. 169, 174, the law of unfair competition is the natural evolution of the law of the trade-mark, out of which it has grown. There is no merit in the objection taken. Protection against unfair competition is afforded upon the same general principles upon which technical trade-marks are protected. And if a complaint prays an injunction for the infringement of a trade-mark, and the court, at a preliminary hearing and without passing upon the validity of the trade-mark, states that it is convinced from the affidavits presented that the defendant's conduct constitutes unfair competition, it may properly issue a preliminary injunction in the form adopted in the instant case. Whether the injunction goes to prevent the infringement of a trade-mark, or to prevent unfair competition, the object is the same, the protection of the plaintiff's right to the profits of his own business, and evidence introduced to show violation of a trade-mark may make out a clear case of unfair competition. And if under his complaint and the accompanying affidavits the plaintiff makes out a prima facie case of unfair competition, he is entitled to a temporary injunction. The term infringement "may be considered as a term covering all acts violating rights of others, either under the law as to technical trade-marks or that of unfair competition." Nims on Unfair Business Competition, p. 40, § 21.

Order affirmed.