### ELDER MFG. CO. v. MARTIN TRENKLE CO., Inc.
### Civ. J–624.

United States District Court
E. D. Arkansas, Jonesboro Division.

May 11, 1950.

Joe C. Barrett (of Barrett, Wheatley & Smith), of Jonesboro, Arkansas, for plaintiff Alfred W. Petchaft, of St. Louis, Missouri, of counsel.

Charles Frierson, of Jonesboro, Arkansas, for defendant.

TRIMBLE, Chief Judge.

■ This cause came on for trial and the court, having heard the evidence and considered the stipulation of the parties, finds the facts and states the conclusions of law as follows:

### Findings of Fact.

1. Plaintiff, Elder Manufacturing Company, is a Missouri corporation, with its principal place of business in St. Louis, Missouri.

2. Defendant Martin Trenkle Co., Inc., is an Arkansas corporation, with its principal place of business in Blytheville, Arkansas.

3. This is an action of a civil nature and the amount in controversy exceeds $3,000 exclusive of interest and costs.

4. This is a suit under the trade-mark laws of the United States.

5. This suit is for unfair competition under the laws of the United States, the general laws and the laws of the State of Arkansas.

6. Since about June 1, 1916, plaintiff has used as a trade-mark for the identification of its merchandise the words "Tom Sawyer."

7. In connection with its trade-mark, and its use, plaintiff adopted a distinctive and unique form of pictorial representation or illustration, consisting of a stylized drawing of a boy painting a fence on which the words "Tom Sawyer" appear in boyish lettering.

8. Under this trade-mark, and the accompanying pictorial representation or illustration, plaintiff manufactures and sells boys' wearing apparel, together with some form of toys, playing equipment, and novelties, all but the wearing apparel being manufactured, sold and distributed as a means of advertising its boys' wearing apparel.

9. Since 1916 plaintiff has spent large sums of money in advertising its merchandise under its trade-mark "Tom Sawyer," and has made this trade-mark with its distinctive label well and favorably known to the buyers of boys' wearing apparel, both among the merchants and retail buyers, and has enjoyed a large and lucrative business in its merchandise under its trade-mark.

10. The defendant Martin Trenkle, Inc., about six months after its organization and initial operation, that is on July 21, 1948, began the manufacture and sale of paint and paint products under the trade-mark "Tom Sawyer."

11. The containers in which defendant's paint are sold bear a label on which appears a picture or illustration of a boy painting a fence, the words "Tom Sawyer" appearing on the fence in boyish characters.

12. Plaintiff registered its trade-mark with the U.S. Patent Office, has re-registered it as the lapse of time or adding of products made it necessary or advisable, and has taken all steps to keep the certificates issued to it in force and effect. There is no contention that plaintiff's trade-mark is not valid and in full force and effect for boys' wearing apparel, and such other items as have been covered by its registration.

13. Defendant filed in the United States Patent Office an application for registration of its alleged trade-mark, which application is now pending.

14. Plaintiff is not now in the field of manufacturing or selling paint or paint products, and does not contemplate or intend to enter such field in the future.

15. Defendant is not now in the field of manufacturing or selling boys' wearing apparel, or other lines handled by plaintiff, and does not contemplate or intend to enter that field in the future.

16. Upon learning of the action and practices of the defendant in so using the trade-mark and pictorial illustration now complained of, plaintiff immediately notified the defendant of its claim of right thereto, and demanded that the defendant desist from such practices, and has acted diligently and timely in protecting its rights.

17. Defendant did not act in bad faith and was not guilty of fraud in selecting its trade-mark and accompanying pictorial illustration, and did not wilfully intend to infringe plaintiff's trade-mark or be in unfair competition with plaintiff.

18. From the evidence in this case the court finds that there is confusion in the minds of the buying public as to the source of defendant's paints and paint products due to the similarity of the trade-mark and pictorial illustration accompanying it.

19. Plaintiff has suffered no damages.

### Discussion.

The similarity between the two trade-marks and pictorial illustrations accompanying them is very striking. The Court accepts the testimony of the defendant's president that he had neither seen nor heard of plaintiff's trade-mark when he adopted for his company the trade-mark "Tom Sawyer", with the accompanying pictorial illustration, and believes the defendant free of fraud in adopting the trade-mark, and with no intention to be in unfair competition with plaintiff. Yet the similarity is so very striking that the Court must conclude that some agent of the defendant in designing the trade-mark and labels was aware of plaintiff's trade-mark and labels, and used them in designing labels for defendant's products.

From the evidence in the case it appears that defendant did all it knew how to do in making its investigation before filing its application for registration of its trade-mark. Evidently the officers of the company, as they testified, were of the opinion that the use of the trade-mark on paint would not infringe one on wearing apparel for boys, and would not invalidate certificates issued to it.

The Court is of the opinion that this case is ruled by the so-called "Seventeen" case, being Triangle Publications, Inc., v. Hanson, 163 F.2d 74, 78, decided August 15, 1947, by the U.S. Court of Appeals for the Eighth Circuit. In that case the Court said:

"But defendants argue that what they have done cannot legally be termed unfair competition because their business is not competitive with that of plaintiff. Plaintiff admittedly is not engaged in the manufacturing of dresses. * * *

"Going beyond this, however, there can be unfair competition although the businesses involved are not directly competitive. Under present general law, the use of another's mark or name, even in a noncompetitive field, where the object of the user is to trade on the other's reputation and good will, or where that necessarily will be the result, may constitute unfair competition. See e. g. Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974; Del Monte Special Food Co. v. California Packing Corporation, 9 Cir., 34 F.2d 774; Atlas Diesel Engine Corp. v. Atlas Diesel School, D.C.E.D.Mo., 60 F.Supp. 429. This inherently would seem to imply—though the cases are not unanimous in their theory—such a reputation and good will in the circumstances as to make it likely that the public will be confused or deceived by the particular use. Under the rule stated, and finding here as to the reputation and good will of plaintiff's magazine, as to defendants' deliberate attempt to get a free ride on this standing, and as to the likelihood of public confusion from defendants' continued use of the name, clearly entitled the trial court to hold that defendants were guilty of unfair competition. (Citing cases.) There is the additional element in the situation, as found by the trial court, that persons

**892**

in the fashion and apparel business had in fact been confused into believing that there was some relation between defendants' dresses and plaintiff's magazine."

■ The business operated by the plaintiff and the defendant are dissimilar, and it is not the intention of either to project its business into the field occupied by the other, yet, whether intentional or unintentional, the result is that the defendant will get a free ride upon the good will and reputation built up by the plaintiff, and to that extent plaintiff's right of property in the trade-mark, and its value to the plaintiff, is diluted and rendered less valuable. Under the modern law of trade-mark and unfair competition the lack of intentional infringement or competition is not controlling. Guilty intent is not necessary. It is the fact question, is there possible infringement, confusion or origin or unfair competition? If there is, then plaintiff is entitled to relief. Coty, Inc., v. Parfums De Grande Luxe, 2 Cir., 1924, 298 F. 865, certiorari denied 266 U.S. 609, 45 S.Ct. 94, 69 L.Ed. 466.

### Conclusions of Law.

1. The court has jurisdiction of the parties and the subject matter.

2. The trade-mark of the plaintiff is a valid one and is in force and effect.

3. Plaintiff's trade-mark is a valuable asset to it and its infringement would cause loss to the plaintiff.

4. Defendant has infringed plaintiff's trade-mark rights.

5. Defendant has been guilty of unfair competition.

6. Plaintiff is not entitled to an accounting.

7. Plaintiff is entitled to an injunction against the defendant's infringement of its trade-mark and continued unfair competition.

8. Neither party is entitled to judgment for costs.

9. Counsel for plaintiff will prepare praecipe for a decree enjoining the defendant from continuing infringement and unfair competition.